STATE EX REL. SCHLECK and another, Appellants, vs. ZONING BOARD OF APPEALS OF THE CITY OF MADISON and others, Respondents.

*November 16—December 15, 1948.*

For the appellants there was a brief by *Aberg, Bell, Blake & Conrad* of Madison, and oral argument by *William J. P. Aberg* and *Edwin Conrad.*

*Harold E. Hanson,* city attorney, for the respondents.

ROSENBERRY, C. J.   The first question presented to this court is whether it has jurisdiction of the issues raised on the appeal.

The original application for a building permit for the lot in question was dated February 14, 1946, and denied for the reason that the application failed to comply with the zoning-ordinance back-yard requirements.   The Zoning Board of Appeals on appeal from the refusal of the building commissioner to grant the permit on March 8, 1946, affirmed the action of the building commissioner.

On January 8, 1947, relators appealed a second time from the order of February 14, 1946, on which appeal the Board of Appeals affirmed the action of the building commissioner on February 11, 1947.   The relators filed a new application for building permit on June 11, 1947, which was taken up directly by the Zoning Board of Appeals.   On July 11th further action on the application was deferred to the next meeting of the Appeals Board but the following entry appears in the minutes of the board:

"This case has been before the board for several months, but this hearing is on the basis of a new application and new evidence."

The question at issue on each of the various applications and appeals was whether the relators should be granted a permit to erect a building on the same premises.

It is contended here that the denial of the first application for building permit for the lot in question and its affirmance

by the Board of Appeals was *res adjudicata,* and the appeal in this case not having been taken within thirty days after the filing of the first decision by the Zoning Board of Appeals on February 14, 1946, that no jurisdiction was conferred upon the circuit court by the appeal and hence this court has none.

The sole ground upon which this contention rests is a decision in the case of *Canzano v. Hanley* (1946), 88 Misc. 167, 66 N. Y. Supp. (2d) 709, which so far as we are able to see has no application in this case. The application in this case was not an application for review of a ruling made on a prior application, but a new and separate proceeding, and was so designated by the Board of Appeals. Par. 10 of sec. 62.23 (7) (e), Stats., provides that:

"Any person or persons, . . . may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board of appeals."

The relators proceeded strictly in accordance with this statute, and the position of the respondent is not well taken. The doctrine of *res adjudicata* has no application to the exercise of the power of an administrative body. *Duel v. State Farm Mut. Automobile Ins. Co.* (1942) 240 Wis. 161, 1 N. W. (2d) 887, 2 N. W. (2d) 871.

So that there may be no mistake we point out again that when an administrative body exercises legislative power, authority cannot be conferred upon the court on appeal or review to exercise the discretion conferred upon the administrative agency. It may only affirm or reverse the order of the agency. *Appleton Chair Corp. v. United Brotherhood* (1941), 239 Wis. 337, 1 N. W. (2d) 188.

Upon the merits the facts in this case are not in serious dispute. The lot is in a Class A residence district and the reason for the denial of the application for a permit was based primarily on the ground that the building when erected would not conform to the rear-yard requirements of sec. 16.06 (V)

(A) and other requirements of the zoning ordinances of the city of Madison.    The situation is best disclosed by reference to Exhibits B and C, reproduced herewith.

Exhibits B and C.

Sec. 16.06 (V) (A) of the ordinance of the city of Madison provides:

"There shall be a rear yard on every lot.  The least depth of any rear yard shall be forty (40) feet.  Uninclosed ground-story porches or projections not more than one story high may extend ten (10) feet into a required rear yard.

Sec. 16.16 (IV) (A) (1) provides:

"For each foot by which a lot existing and of record at the time of enactment of this ordinance is less than one hundred twenty (120) feet deep, three (3) inches may be deducted from the required least depth of the rear yard; provided, however, that no required rear yard shall be less than ten (10) feet deep in any case."

The relators concede that the location of the proposed building does not conform to the requirements of these ordinances. They further contend, however, that under the provisions of sec. 16.18 (V) (B) (3) the board has power to authorize a variance and erred in not doing so.  That section, so far as material, provides as follows:

"Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the enactment of this ordinance or by reason of exceptional topographic conditions, or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any provision of this ordinance would result in peculiar and exceptional practical difficulties or exceptional and undue hardship upon the owner of such property, the board shall have the power to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of this ordinance."

Upon the last hearing the Appeals Board disposed of the matter by reference to the decision rendered by it on March 8,

1946, in response to the first application.    Among other things the Appeals Board stated:

"It further appears that appellants desire to erect a new house in L shape located on that rear portion of lot 21, which is owned by appellants.    That portion has an angular frontage on Few street of 56 feet, has a depth on the north of 64 feet, and a depth on the south of 35 feet.    The rear of the lot is 38 feet in width.    The location of the proposed building is such as to leave a 4 foot side yard on the north, a 10 foot side yard at the minimum point on the south, and a 15 foot rear yard. This building would be directly east and to the front of the front entrance of the cottage or building located on the rear or south end of lots 19 and 20.    It further appears that within the last year the appellants desired to locate the one-family residence on the parcel described as the south $\frac{1}{2}$ of lot 21, and on which they now propose to erect a building, but that the building commissioner informed them by letter in July of 1945, that that could not be done.    It further appears that that same building, instead of being on lot 21 was built on the east $\frac{1}{2}$ of lot 19."

It appears that on the basis of the provisions of sec. 16.06 (V) (A) already set out, that the rear yard of 15 feet of the proposed building was not sufficient.    This assumes that the rear end of lot 21 on which appellants proposed to erect the building constitutes a lot existing and of record at the time this ordinance was adopted.    It also appeared that the owner of the property on lot 20 objected to the variance, that it was in violation of the ordinance and that the variance was not proper. The board concluded:

"After consideration of all the facts and of the ordinance, and of the nature of the request, it was moved by Leo Blied, seconded by R. J. Sutherland, that the appeal be denied for the reason that it was not a proper case for a variance of the requirement as to rear yard, and for the requirement in sec. 16.05 (6) requiring that no lot should contain a building used as a residence unless such lot abuts for at least 20 feet on a street, or half the easement required by such provision.    The board

felt there was no showing of unnecessary hardship or difficulty as contemplated by the statute giving the board power to make variances."

By reference the board also incorporated in its decision parts of the decision made by it on February 4, 1947. There the board pointed out that under par. (b) of 16.05 (6) the cottage would constitute the residence building to the rear and on the same lot on which a principal residence building is located (assuming that the proposed building were built in front of the cottage). "The answer to the whole appeal is that the ordinance contemplates only one residential building on a lot. There is a residence, to wit, the cottage, already located on the rear of lots 19 and 20, and as to which lot 21 forms the front yard or frontage on Few street, and therefore there cannot be another residence in front of the cottage. A view of the premises convinced the board of this proposition. The rear of lots 19, 20, and 21 is the lot occupied by the cottage, and there cannot be another residence in front of it." It was also pointed out that the "east one half of lot 19 had served for the street frontage for the cottage, but when it was desired to close off that street frontage, the then existing building on the rear portion of lot 21 was torn down so as to give the cottage a frontage on North Few street. That being done, the appellant cannot now take away the street frontage thus provided for the cottage." As already stated, the appeal was denied.

The principal contention made by the relators on this phase of the case is that the Zoning Board of Appeals was required under the circumstances of this case to grant a variance in the rear-yard requirements of the ordinance as a matter of law. It is also contended that the board erred in a number of other particulars.

Lot A, B, C, D, E is less than 120 feet deep. The west side line, A, B, is 64 feet in length; the east side line E, C, D, is 36.5 feet. The board erroneously considered that the mean

depth of the lot was 64 feet, which is the length of the line A, B, the longest side. In so holding the board was undoubtedly in error. Sec. 16.04 (15) provides:

"*Lot Depth.* Except as hereinafter specified, is the mean horizontal distance between the front and rear lot lines."

Sec. 16.06 (V) (A) provides:

"There shall be a rear yard on every lot. The least depth of any rear yard shall be forty (40) feet. . . ."

As already stated, where the lot is less than 120 feet deep, three inches may be deducted from the required least depth, 40 feet, of the rear yard. In this case the normal rear yard required is 40 feet. From this should be deducted 17.5 feet (3 in. x 70 = 210 in. or 17.5 ft.) leaving the rear yard 22.5 feet instead of 40 feet. This correction would make a difference of 3½ feet in the rear-yard depth required under the ordinance, from that found by the board (26 feet). Relators cannot provide a 22.5 foot rear yard. The best they can do is to leave a rear yard of 15 feet, which amounts to a discrepancy of 7½ feet instead of 11 feet as found by the board. It is argued that this error may have materially affected the determination of the board. A careful examination of the board proceedings leads us to the conclusion that if the rear-yard variance had been correctly computed by the board it would not have affected the determination of the Board of Appeals.

In disposing of this matter the trial court said:

"There is no contention that the board applied an erroneous view of the law in construing the ordinance, and that therefore its action is illegal; it is only claimed that the refusal to grant a variance in the rear-yard requirements, which is permitted under the ordinance, was an arbitrary, unjust and unreasonable action, and therefore an abuse of discretion. . . . The only power or right vested in the board is to waive exact compliance with the details of the ordinance. This waiver rests largely in the sound discretion of the board. To grant such a variance, the board must find that 'exceptional and undue

hardship' will result to the owners, and even that is not sufficient; it must further find that such relief may be granted only when the board in its judgment can find that it can be done 'without substantial detriment to the public good and without substantially impairing the intent and purpose of the ordinance.'"

The court correctly sustained the decision of the board.

It is contended that the board committed a number of errors of law in the course of the proceedings. These rest upon statements made by the board by way of argument or reasoning, but so far as an examination of the record discloses, the matters complained of were not the basis of decision which is set forth in the return. Therefore we do not consider each of these errors in detail. We have carefully examined the contentions of the relators and find nothing that would require the determination of the board to be vacated as arbitrary or capricious.

We note only one of the contentions of the relators which is that the ordinance, as correctly construed, requires the board to grant a reasonable variance in the rear-yard requirements in view of the circumstances of this case. It is argued if the court does not construe this ordinance in that manner but upholds the action of the zoning board, then appellants are deprived of the use of their property for any purpose whatsoever, either for residential, commercial, or industrial, and the ordinance is unconstitutional.

The very purpose of a zoning law is to establish limitations upon the use of private property and prescribe how it may be used. A zoning law necessarily, at least in many cases, limits the use which might otherwise be made of the property. The application of the law may in some cases create difficulties and hardship. In such cases the Zoning Board of Appeals may authorize a variance as provided in sec. 16.18 (V) (B) (3), provided it may be granted without substantial detriment to the public good and without substantially impairing the intent and

purpose of this ordinance. Whether a variance shall be authorized in a particular case is to be determined by the board in the exercise of its discretion. When it acts within the powers conferred upon it and its action is not arbitrary or capricious there is no violation of the property owner's constitutional rights. It is considered that in this case there was no abuse of discretion, that the determination made by the board was neither arbitrary nor capricious and therefore the relators' constitutional rights were not invaded.

In this case the board heard the relators at length and gave the matter thorough consideration. The fact that the Board of Zoning Appeals might have reached a different conclusion does not make the conclusion it did reach either arbitrary or capricious. If only one conclusion could be reached the decision of the board would not be discretionary.

*By the Court.*—Judgment affirmed.