574 F.2d 316
 OHIO FAST FREIGHT, INC., Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
and
Coldway Food Express, Inc., Riggs Food Express, Inc., and
Subler Transfer, Inc., Intervening Respondents.
 No. 76-1524.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 12, 1977.
Decided March 17, 1978.
Amended April 17, 1978.
 
 Michael Spurlock, Paul F. Berry Co., L.P.A., Columbus, Ohio, for petitioner.
 Fritz R. Kahn, Gen. Counsel, I. C. C., John J. McCarthy, Jr., Washington, D. C., Edward Levi, Atty. Gen. of U.S. Dept. of Justice, Washington, D. C., Lloyd John Osborn, Donald I. Baker, Carl D. Lawson, Daniel J. Conway, Dept. of Justice, Washington, D. C., U. S., for respondents.
 Before PHILLIPS, Chief Judge, and WEICK, Circuit Judge, and CECIL, Senior Circuit Judge.
 PHILLIPS, Chief Judge.
 
 
 1
 Petitioner, Ohio Fast Freight, Inc., seeks to set aside an order of the Interstate Commerce Commission (Commission) entered in Ohio Fast Freight, Inc. Extension Gateway Elimination, No. MC-14702 (Sub. No. 57G) which denied, in part, petitioner's application for the elimination of its Warren and Blaine, Ohio, gateways. In the application, petitioner sought a certificate of public convenience and necessity authorizing direct operation as a motor common carrier of general commodities between points in Ohio and in the District of Columbia, Virginia and West Virginia. In support of the application, petitioner submitted traffic studies of shipments of a variety of commodities between various points in the relevant area. There was no showing of any transportation of foodstuffs, however. Prior to the present proceedings, petitioner was authorized to transport general commodities, with customary exceptions for articles of unusual value, high explosives, household goods, commodities in bulk, commodities requiring special equipment, and articles injurious to other freight. Six motor carriers, three of which are intervening respondents in this action, filed statements in opposition to the application.
 
 
 2
 The Commission granted the requested gateway elimination, but imposed restrictions against the transportation of foodstuffs because petitioner had failed to demonstrate that it was an effective competitor in the transportation of this commodity. Subsequently, Ohio Fast Freight filed petitions for reconsideration and for a finding that an issue of general transportation importance was presented by the decision to impose restrictions against the transportation of foodstuffs. The petitions were denied.
 
 
 3
 Ohio Fast Freight contends that the Commission has acted in an arbitrary and unreasonable manner by departing, without explanation, from its long established policy against the fragmentation of general commodity authorities and by imposing a more onerous burden of proof for the elimination of gateways. The petitioner asserts that the Commission has erroneously restricted its operating authority with respect to the transportation of foodstuffs and asks this court to remand the case to the Commission with directions to grant the application in its entirety.
 
 
 4
 The United States and the Commission take contrary positions. The Commission contends that the petition should be dismissed and the requested relief denied. The United States asserts that the Commission has acted in an arbitrary manner by departing without explanation from its policy against fragmentation of general commodity authorities and that the order should be set aside and the case remanded to allow the Commission to explain its deviation from its general policy.
 
 
 5
 We conclude that the Commission has not articulated the basis for the partial gateway elimination in this case in such a manner as to enable us to sustain the order at this time. Accordingly, we agree with the position of the United States and remand the case to the Commission.
 
 
 6
 In Childress Elimination Sanford Gateway, 61 M.C.C. 421 (1952) (hereinafter Childress ), the Commission established the burden of proof that must be met by an applicant seeking a gateway elimination. The Commission stated that the relevant inquiry is:
 
 
 7
 (1) whether applicant is actually transporting a substantial volume of traffic from and to the points involved by operating in good faith through the gateway and, in so operating, is effectively and efficiently competing with the existing carriers, and (2) whether the elimination of the gateway requirement would enable applicant to institute a new service or a service so different from that presently provided as to materially improve applicant's competitive position to the detriment of existing carriers. Id. at 428.
 
 
 8
 The first Childress criterion subsequently was clarified in Maryland Transportation Co. Extension Specified Commodities, 83 M.C.C. 451, 455 (1960) (hereinafter Maryland Transportation ), in which the Commission stated:
 
 
 9
 (I)t must be shown that the proposing carrier is an effective competitor as to substantially all of the commodities and between substantially all of the points within the scope of its pertinent outstanding authority. (emphasis added).
 
 
 10
 The Commission subsequently has applied this burden of proof many times. See, e. g., Bowman Transportation, Inc. Extension Substitution of Gateways, 100 M.C.C. 314, 328 (1965); Service Trucking Co., Inc., Extension Frozen Pies and Pastries, 88 M.C.C. 697, 700-01 (1962); Home Transportation Co., Inc. Extension Removal Marietta Gateway, 84 M.C.C. 671, 677 (1961); Frank Cosgrove Transportation, Inc. Extension Liquid Commodities, 83 M.C.C. 691, 695-96 (1960).
 
 
 11
 In considering gateway elimination applications, the Commission has expressed a general policy against fragmenting general commodity authority[1] and against the partial elimination of gateways.[2] In Maryland Transportation, supra, for example, the Commission stated:
 
 
 12
 (W)e do not believe that singling out specific commodities for the purpose of authorizing the elimination of a gateway would be in the best interest of the public generally . . . . In addition, we are unwilling to establish a precedent for such partial elimination of gateway, for this could result in a situation in which, in determining applications such as this, we would be required to consider separately each and every commodity transported and point served in determining the competitive status of the applicant, a most difficult administrative task.
 
 
 13
 83 M.C.C. 451, 453, quoting with approval Maryland Transportation Co. Extension Specified Commodities, 79 M.C.C. 795, 799-800 (1959).
 
 
 14
 Most recently, in Motor Common Carriers of Property, Routes and Services, 119 M.C.C. 530, 550 (1974) (hereinafter Motor Common Carriers ), the Commission promulgated new gateway elimination regulations[3] and specifically stated that the criteria established in Childress, as amplified by other Commission decisions, would continue to govern the burden of proof in gateway elimination proceedings. The Commission now contends, however, that although the policy against partial gateway elimination set forth in Maryland Transportation, supra, was applicable to the former voluntary gateway elimination proceedings, it is not applicable to the current mandatory gateway elimination proceedings established by Motor Common Carriers, supra and 49 C.F.R. § 1065. While the policy expressed in Maryland Transportation indeed may have been modified or abandoned in light of the mandatory gateway elimination procedures as the Commission contends, we are aware of no decision of the Commission which explains this departure from long established policy.
 
 
 15
 In addition, the Commission has failed to explain its apparent application of a more stringent standard of proof than that traditionally required in gateway elimination proceedings. Previously, the Commission clearly stated that a complete gateway elimination was to be granted if the applicant made a showing as to substantially all of the commodities and substantially all the points within its relevant authority. Maryland Transportation, supra at 455. The order under review states in part:
 
 
 16
 It further appearing, That the evidence submitted in support of the application establishes a need for applicant's service; that foodstuffs should not be included in the grant since applicant has not proven that it has transported substantial foodstuffs traffic or that it is an effective competitor for foodstuffs traffic; that the supplemental evidence tendered by applicant shows no movements of foodstuffs; and that the grant should be limited with regard to service between Ohio and West Virginia . . . because of applicant's failure to show it is an effective competitor for the relevant traffic. . . .
 
 
 17
 The Commission appears to have modified the traditional burden of proof by requiring a showing of effective competition as to specific commodities rather than a showing as to substantially all such commodities before the gateway in question may be eliminated.
 
 
 18
 Although valid justifications may exist for the Commission's apparent departure from its previous general policies and burden of proof, none is articulated in its decision in the present case. It is axiomatic that an administrative agency either must conform with its own precedents or explain its departure from them. See, e. g., Secretary of Agriculture v. United States, 347 U.S. 645, 653-54, 74 S.Ct. 826, 98 L.Ed. 1015 (1954); Public Service Commission v. F.P.C., 167 U.S.App.D.C. 100, 115, 511 F.2d 338, 353 (1975); Greater Boston Television Corp. v. F.C.C., 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). See generally K. Davis, Administrative Law of the Seventies § 17.07-4 (1976). As the court noted in Greater Boston Television Corp. v. F.C.C., 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852:
 
 
 19
 (A)n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute. (footnotes omitted).
 
 
 20
 The Commission is required by law either to conform with its general policies or to explain its departures from them. The case is remanded to the Commission with directions to conduct further proceedings consistent with this opinion.
 
 
 21
 No costs are taxed. Each party will bear its own costs in this Court.
 
 
 
 [1]
 See, e. g., Ohio Fast Freight, Inc. Control and Merger Trumbull Cartage & Co., 109 M.C.C. 88, 93 (1969); Fox Smythe Transportation Co. Extension Oklahoma, 106 M.C.C. 1, 21-22 (1967)
 
 
 [2]
 See, e. g., Atlas Van Lines, Inc. Extension Elimination of Four Gateways, 105 M.C.C. 156, 163 (1967), and cases cited therein. The Commission has granted partial gateway eliminations when "compelling reasons" so required. See, e. g., Mercury Freight Lines Inc. Extension Sumter, South Carolina Gateway, 119 M.C.C. 88 (1973); Thurston Motor Lines, Inc. Charlotte Gateway, 105 M.C.C. 586 (1967). Unlike the present proceeding, however, in these cases, the Commission delineated the reasons for its departure from the general policy against partial gateway elimination
 
 
 [3]
 See 49 C.F.R. § 1065. For a general discussion of the evolution of gateway elimination procedures see Dart Trucking Co. v. United States, 555 F.2d 555 (6th Cir. 1977)