UNION STATE BANK and Farmers Exchange Bank of Neshkoro, Petitioners-Appellants,

v.

Richard E. GALECKI and Commissioner of Banking, Respondents,

M & I PEOPLES BANK OF COLOMA, Intervenor-Respondent.

Court of Appeals

*No. 86–2105. Submitted on briefs October 12, 1987.—Decided October 29, 1987.*

(Also reported in 417 N.W.2d 60.)

For the petitioners-appellants the cause was submitted on the briefs of *George M. St. Peter* and *Kathryn M. Bullon-Stommel,* and *St. Peter Law Offices, S.C.,* of Fond du Lac.

For the respondent Richard E. Galecki, the cause was submitted on the briefs of *Donald J. Hanaway,*

attorney general, and *Edward S. Marion,* assistant attorney general.

For the intervenor-respondent M & I Peoples Bank of Coloma, the cause was submitted on the brief of *Bradden C. Backer* and *Michael B. Apfeld,* and *Godfrey & Kahn, S.C.,* of Milwaukee.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.   The Union State Bank and Farmers Exchange Bank of Neshkoro (collectively "Union") appeal from a judgment dismissing their petition to review an order of the Wisconsin Banking Review Board[1] and affirming the board's order. The order granted an application by the intervenor, M&I Peoples Bank of Coloma, to open a branch bank in the Town of Dakota in Waushara County.

The issues are: (1) whether the board is required to consider the economic effects on competitor banks in passing on a branch banking application; (2) whether the proceedings before the board denied Union's right to due process of law; and (3) whether Union's appeal was frivolous within the meaning of sec. (Rule) 809.25(3), Stats. We answer all questions in the negative and affirm.

The facts are not in dispute. M&I first attempted to open a branch bank near Wautoma in 1979. At that time sec. 221.04(1)(j), Stats. (1979–80), provided that a bank could establish a branch office, with the approval of the board and the commissioner of banking, under the following criteria: (1) the branch had to be

---

[1]While the hearings were held before the commissioner of banking and the chairman of the banking review board, and the order was signed by both, we will, unless otherwise noted, refer to the two agencies as "the board" for purposes of clarity.

located in a community having no bank; (2) the site had to be more than three miles from any other bank (or branch); and (3) the branch had to be located in the same county as the home bank, or in a contiguous county if no more than twenty-five miles from the home bank.

M&I's 1979 application requested approval for a branch at a location near, but not identical to, the site designated in the application that is the subject of this lawsuit. The board, although finding that the application satisfied the statutory criteria, nonetheless denied the application on "economic" grounds—including the potential adverse effects on Union.

In 1982, sec. 221.04(1)(j), Stats., was amended to eliminate the "bankless community" and "contiguous county" criteria, leaving only the mileage requirement, which was amended to provide that a branch need be located only 1½ miles from another's home bank or ¾ mile from another bank's existing branch. Ch. 344, Laws of 1981.

In 1984, the board began branch banking rulemaking proceedings. The notice of the hearing and a synopsis of the proposed rules were published in the Wisconsin Administrative Register (September 30, 1984, No. 345). Union appeared at the hearings, objecting to the proposed rules because they did not include the economic effect on competitor banks in the criteria established for approval of branch bank applications. The board adopted the proposed rules, which were then sent to the appropriate state senate and assembly oversight committees pursuant to sec. 227.018(2), Stats. (1983–84). Union repeated its objections to the committees, and when neither committee took any action to amend the rules, they became effective on May 1, 1985.

The rule establishing the criteria for acceptance of branch banking applications appears in Wis. Adm. Code, sec. Bkg. 8.02, and provides as follows:

> A bank may establish and operate a branch provided only that the applicant bank and the proposed location satisfy the technical requirements specified in s. 221.04(1)(j) or (n), Stats., and that the applicant bank has not been determined by the commissioner to be conducting its business in an unsafe, unsound or unauthorized manner.

In November, 1985, M&I submitted the instant application. Union appeared at the hearings and renewed its earlier objections. The board granted M&I's application, concluding, *inter alia,* that Wis. Adm. Code, sec. Bkg. 8.02, and sec. 221.04(1)(j), Stats., were "the only relevant criteria for judging an application to open a branch bank," and that all requirements were satisfied. Union petitioned the circuit court for review, and, as indicated, the court affirmed the order. Other facts will be referred to below.

## I. ABSENCE OF "ECONOMIC CRITERIA"

Union argues that the board's order represents a change in its "established policy," which is improper absent a "significant change in the underlying statute," citing *Waste Management of Wisconsin v. DNR,* 128 Wis. 2d 59, 381 N.W.2d 318 (1986); *Wis. Elec. Power Co. v. DNR,* 93 Wis. 2d 222, 287 N.W.2d 113 (1980); *Josam Mfg. Co. v. State Board of Health,* 26 Wis. 2d 587, 133 N.W.2d 301 (1965); and *Frankenthal v. Wisconsin R.E. Brokers' Board,* 3 Wis. 2d 249, 88 N.W.2d 352, *reh'g denied,* 89 N.W.2d 825 (1958). Three of the cases, *Wis. Elec., Josam,* and *Frankenthal,* are inapposite, for each dealt with statements of general

policy which were held to constitute "rules" within the meaning of ch. 227, Stats., even though they had never been formally adopted by the agencies. The action claimed by Union to constitute a "policy" in this case was not that at all; it was simply a single decision on a particular application. The issues in *Waste Management* concerned a licensee's right to a hearing on the agency's modifications to an approved plan of operation for a waste disposal site. Union does not say how the case is applicable, and we do not see that it is at all relevant to the matters at issue here.

Beyond that, Union's argument must fail for two reasons. As stated in *Frankenthal,* an agency's interpretation of a statute it is charged to administer is controlling only if the statute is ambiguous *and* the interpretation has been consistently applied "over a long period" of time. 3 Wis. 2d at 255, 88 N.W.2d at 356. Here, neither condition is met.

First, we see no ambiguity in sec. 221.04(1)(j), Stats. It states quite simply that a bank may:

> 1.  [E]stablish and maintain a branch bank, upon approval by the commissioner and the banking review board, within 25 miles of the home bank or within the county of the home bank, whichever is greater.
> 2.  A bank may not establish a branch under subd. 1 within 0.75 miles of another bank's branch existing on May 7, 1982.
> 3.  A bank may not establish a branch under subd. 1 within 1.5 miles of another home bank.

There is nothing ambiguous about the statute; if the distance requirements are met, the bank may establish a branch. Moreover, the board's duly adopted rules provide that a branch may be established if the

requirements of sec. 221.04(1)(j) are met and if the bank has not been found by the commissioner to be conducting its business in an unsafe manner. Wis. Adm. Code, sec. Bkg. 8.02.

■

Second, while the board, in 1980, applied economic criteria in denying M&I's application for a branch bank, that was no more than a ruling in a single case. The agency was not speaking to all applicants, present and future; nor was it adopting a policy or an interpretation of a statute to be used as a guide for future branch bank proceedings. *Frankenthal* and similar cases do pay deference to an agency's interpretation of an ambiguous statute if that interpretation has been followed by the agency "over a long period" of time—in *Frankenthal,* for nearly twenty-seven years, 3 Wis. 2d at 255, 88 N.W.2d at 356. However, we do not have that situation or anything like it here. The 1980 ruling was nothing more than a one-time decision in an individual agency proceeding, and the cases tell us that not only may an agency reopen and reconsider its orders on a particular problem, *Fond du Lac v. Dept. of Natural Resources,* 45 Wis. 2d 620, 625–26, 173 N.W.2d 605, 608 (1970), but it may also adopt or entertain a different view of the law in subsequent cases. *Duel v. State Farm Mut. Automobile Ins. Co.,* 240 Wis. 161, 181, 1 N.W.2d 887, 895–96 (1942). We also agree with M&I that administrative decisions on license applications are particularly lacking in precedential value, for each application is a "new and separate proceeding." *State ex rel. Schleck v. Zoning Board of Appeals,* 254 Wis. 42, 45, 35 N.W.2d 312, 313 (1948).

In our view, the board's consideration of M&I's application comported with sec. 221.04(1)(j), Stats.,

and the administrative rules enacted thereunder, and the board was in no way bound by its 1980 decision in another licensing case.

## II.  DUE PROCESS

■ Union argues, without citation to the record or to any legal authorities, that its right to due process of law was violated because: (1) the board's procedures do not provide for notice to area banks of branch bank applications; (2) the board and the commissioner held a joint hearing, with only the board chairperson and the commissioner present, and Union was thus unable "to address the full [b]oard"; and (3) the board and commissioner decided the matter in a "closed session" with their attorney present.

These undeveloped, unsupported arguments are refuted by the law and by the record in this case. First, the record establishes that Union not only had notice of the hearing from both M&I and the board, but that it participated extensively in the proceedings. Second, we find nothing in the statutes or rules that would prohibit a joint hearing. Section 221.04(1)(j)1, Stats., requires approval by the commissioner and the board, and sec. 227.09, Stats. (1983–84), permits "an official of the agency"—such as the chairperson of the board— "to preside over any contested case." We note, too, that despite advance notice of the joint hearing—and full participation in it—Union never objected to the procedure until after the order was issued. Finally, Union has offered no authority for the proposition that the board's failure to allow oral argument, and its closed session deliberations in the presence of its legal counsel, abridged Union's due process rights.

Due process in an administrative proceeding is really a question of the presence or absence of "fair play," *State ex rel. Richey v. Neenah Police & F. Comm.*, 48 Wis. 2d 575, 580, 180 N.W.2d 743, 746 (1970), and we have recognized that fair play includes "the right to be heard by counsel upon the probative force of the evidence adduced by both sides and upon the law applicable thereto." *Bituminous Casualty Co. v. ILHR Department*, 97 Wis. 2d 730, 734, 295 N.W.2d 183, 186 (Ct. App. 1980), quoting *Richey*, 48 Wis. 2d at 580, 180 N.W.2d at 746. We have found no case suggesting that denial of the opportunity for oral argument, following a party's full participation in the hearing and filing of briefs, is contrary to accepted notions of due process or fair play in administrative hearings. Indeed, the Wisconsin Supreme Court ruled seventy years ago that an administrative officer could deny oral argument "where there was opportunity given to the parties ... to present all the facts and make all the suggestions they deemed necessary ... in writing," without abridging anyone's right to due process of law. *State ex rel. School Dist. No. 8 v. Cary*, 166 Wis. 103, 110, 163 N.W. 645, 648 (1917).

As for the closed session, we note that such sessions are specifically authorized by law for an agency's posthearing deliberations in contested cases. Sec. 19.85(1)(a), Stats. Nor has Union persuaded us that, without more, the presence of the board's legal counsel during those deliberations was a violation of due process. First, Union has not established that the attorney made any *ex parte* communication to the board, nor even that he occupied a position adverse to Union's interests. Even if there was evidence of an *ex parte* communication, it would constitute material error only if Union was "prejudiced by an inability to

rebut the facts communicated *and* if improper influence on the decision maker appears with reasonable certainty to have resulted." *State ex re. Irby v. Israel,* 100 Wis. 2d 411, 425, 302 N.W.2d 517, 525 (Ct. App. 1981) (emphasis added). Here, Union has done no more than assert that the board's counsel's presence at the closed meeting provided "a blatant opportunity to influence the [b]oard." Innuendo, however, cannot establish a constitutional violation. Union has not persuaded us that its legal or constitutional rights were in any way violated by the board's procedures.

## III. FRIVOLOUS APPEAL

■

M&I argues that Union's appeal lacked any "reasonable basis in law or equity," within the meaning of sec. (Rule) 809.25(3), Stats., and asks us to remand to the circuit court for a determination of attorney fees to be assessed against Union. While we agree that Union's appeal finds precious little support in law, and, further, that its brief inappropriately includes arguments unsupported by record or case citations—and some statements wholly outside the record[2] —we are unable to conclude that the appeal itself lacked any reasonable basis in law and equity or that it "could not be supported by a good faith argument for an extension, modification or reversal of

---

[2]Union states in its brief, for example, that it "[has] been informed by one Board member that the Board was 'strong armed' into approval [of the application] by the Commissioner, who asked the Board if it 'wanted a lawsuit on its hands' if it failed to approve the action." As with many of Union's factual assertions, there is no citation to the record, and it appears from the statement itself that it is a gratuitous remark wholly improper in any brief.

existing law" and thus was frivolous under sec. (Rule) 809.25(3).

*By the Court.*—Judgment affirmed.[3]

___

[3]M&I moved for permission to file a sur-reply brief on grounds that Union's reply brief "contain[ed] false and unsupported statements of fact" and raises an issue not discussed in its principal brief.

We have declined to permit the additional brief because: (1) the purported factual misstatements have little, if any, bearing on the issues; and (2) we do not in any case consider arguments raised for the first time in a reply brief. *Waukesha Concrete v. Capitol Indemnity,* 127 Wis. 2d 332, 340 n. 2, 379 N.W.2d 333, 336 (Ct. App. 1985). We therefore deny the motion.