INTERSTATE TELEPHONE COOPERATIVE, INC.,
Appellant,

v.

PUBLIC UTILITIES COMMISSION OF the STATE OF SOUTH DAKOTA, Appellee,

and

BROOKINGS TELEPHONE COMPANY, A DIVISION OF BROOKINGS MUNICIPAL UTILITIES, Intervenor and Appellee.

No. 18182.

Supreme Court of South Dakota.

Considered on Briefs on Oct. 6, 1993.

Reassigned April 12, 1994.

Decided June 29, 1994.

Thomas W. Hertz of Ulmer, Hertz & Bertsch, Menno, for appellant.

Richard J. Helsper of Erickson, Helsper and O'Brien, Brookings, for appellee Brookings Telephone Co.

SABERS, Justice (on reassignment).

Telephone Cooperative appeals from the circuit court's affirmance of the Public Utilities Commission's decision setting a new service area. We affirm.

## FACTS

Interstate Telephone Cooperative (ITC), formerly Brookings–Lake Telephone Company, offers telecommunications services within service areas defined by the South Dakota Public Utilities Commission (PUC). The portion of ITC's service area relevant to this case surrounds, but specifically excludes, the City of Brookings, South Dakota. Brookings Municipal Telephone Company (Telephone Company), Intervenor in this matter, provides telephone services for the City of Brookings (Brookings).

As Brookings grows, it annexes parcels of outlying properties. The record reveals that since 1958, at least fifteen annexations of multiple land parcels have occurred, significantly expanding the Brookings city limits. *See* SDCL 9-4-1. ITC does not challenge the right of Brookings to annex these properties, but challenges the loss of service area to the Telephone Company. Telephone Company has petitioned the PUC to revise the assigned telephone service areas as the Brookings' city limits continue to encroach on ITC's service areas. This has resulted in disputes and litigation between the two entities resulting in several court decisions. *See City of Brookings v. Brookings Lake Tel. Co.,* 85 S.D. 96, 177 N.W.2d 489 (1970) [*Brookings I* ]; *Brookings–Lake Tel. Co. v. City of Brookings,* 430 N.W.2d 575 (S.D.1988) [*Brookings II* ].

The most recent annexations involve four parcels of land. Parcel One is reserved as a

clear landing zone near the airport. No future telephone service is anticipated on that parcel. Parcels Two and Three are small properties, each containing one present ITC customer. Telephone Company claims no service rights to those parcels. The significant property in this dispute is Parcel Four, a large tract on the east side of Brookings, fronting on Interstate 29, and described as "diagonally across" from the Holiday Inn Motel and Convention Center. Brookings purchased this property in February 1991, and annexed the parcel to Brookings in March 1991. Parcel Four, known as the "Industrial Park Property," is reserved for industrial development and is available for prospective businesses wishing to locate in Brookings.

Following these recent annexations, Telephone Company filed a request with the PUC to revise the service area to transfer the service rights for Parcel Four from ITC to Telephone Company. In a 2–1 decision, the PUC granted Telephone Company's request. According to the PUC's Decision and Order, the previous decision of this court, *Brookings II*, 430 N.W.2d at 575, provided precedent for its decision in this case. Commissioner Laska Schoenfelder dissented with a writing, stating in part that Telephone Company should compensate ITC for the loss of future service rights.

The circuit court affirmed the PUC's decision. ITC appeals.

## STANDARD OF REVIEW

 The standard of review is governed by SDCL 1–26–36 [1] and 1–26–37. *In re Northwestern Bell Tel. Co.*, 382 N.W.2d 413,

415–16 (S.D.1986). We make the same review of the administrative agency's decision as did the circuit court, unaided by any presumption that the circuit court's decision was correct. *In re Templeton*, 403 N.W.2d 398, 399 (S.D.1987) (citing *Northwestern Bell*, 382 N.W.2d at 415–16; *Raml v. Jenkins Methodist Home*, 381 N.W.2d 241, 242–43 (S.D. 1986)). Questions of law are fully reviewable, with no deference given to the agency's conclusions of law. *In re State & City Sales Tax Liab. of Quality Serv. Railcar Repair Corp.*, 437 N.W.2d 209, 210–11 (S.D.1989) (citing *Permann v. Dep't of Labor*, 411 N.W.2d 113 (S.D.1987)); *see also U.S. West Commun., Inc. v. Public Util. Comm'n*, 505 N.W.2d 115, 122–23 (S.D.1993). We note that none of the facts of this case are disputed by the parties.

### 1. Res Judicata

 Telephone Company and PUC [2] urge that the doctrine of res judicata prohibits our consideration of the substantive issues in this case. In particular, it is urged that our affirmance of the agency determination in *Brookings II* prohibits any change in position by either the PUC or this court. The doctrine of res judicata is not applicable to this situation. The doctrine of res judicata serves to prevent relitigation of issues actually litigated or which could have been raised and determined in a prior action. *Black Hills Jewelry Mfg. v. Felco Jewel Indus., Inc.*, 336 N.W.2d 153, 157 (S.D.1983) (citations omitted). It is true that the same parties are involved in this appeal as were involved in both *Brookings I* and *Brookings II*. Nevertheless, this appeal involves differ-

1. SDCL 1–26–36 provides:
 The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;

 (5) Clearly erroneous in light of the entire evidence in the record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
 A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

2. The PUC filed no brief in this matter, relying on Telephone Company to defend the PUC's decision.

ent parcels of land, at a later point in time. Although we are considering similar issues, they do not arise from the same set of facts. *See, e.g., Bank of Hoven v. Rausch,* 449 N.W.2d 263 (S.D.1989) (bringing second action for payment involving the same bank note and debt); *Black Hills Jewelry,* 336 N.W.2d at 153 (bringing common law trademark infringement action involving the same facts, after earlier statutory trademark infringement case was decided); *Butler Bros. v. Mason,* 52 S.D. 349, 217 N.W. 510 (S.D. 1928) (questioning whether bulk sales act applied to the same transaction). In the present case, the wrong for which redress is sought is not the *same wrong* for which redress was sought in the earlier action.[3] *Melbourn v. Benham,* 292 N.W.2d 335, 337–38 (S.D.1980). Especially in the administrative setting, we note that "res judicata is at its best in foreclosing a second determination of issues of fact," rather than issues of law—as are presented here. 4 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 21:2 at 49 (2d ed. 1983).

### 2. Precedent

■ ITC claims the decision of the PUC in this matter was based in part on an error of law, the error being that our decision in *Brookings II* is controlling precedent in this matter and that the PUC incorrectly felt strictly bound by precedent. At the time of the hearing, the PUC commissioners were informed by general counsel for the PUC that there was "clear precedent" and since "the facts are very similar," the application of Telephone Company should be granted. When casting his vote, at least one of the PUC commissioners expressed his feeling that there was not "much latitude" and that he was under the impression that the previ-

ous stance on similar or related issues could not be altered, although he was disturbed at how easily the certified franchise service territories can be changed, simply by annexation. The PUC's Conclusion of Law #2 states:

> The Commission's Decision and Order in Docket F–3555 and the Supreme Court's affirmance of that decision in *Brookings–Lake Telephone Company v. City of Brookings,* 430 N.W.2d 575 (S.D.1988) provide precedent for its decision in this docket.

This is a clear statement that the "precedent" of the 1988 case served as a central rationale for the PUC's decision in the present matter. In a letter filed with this court, PUC's general counsel continues to argue that *Brookings II* is "determinative" and "controls this appeal."[4] Whether an administrative agency is bound by such precedent, embodying the application of *stare decisis* in the field of administrative law, is important in this decision. This is a question of law, fully reviewable by this court.

In the judicial setting, previously decided questions of law involving similar fact situations often provide precedential value, embodying the concept of stare decisis. Both federal and state courts have repeatedly noted, however, that administrative agencies are not bound by stare decisis *as it applies to previous agency decisions.* The U.S. Supreme Court has stated that, "An agency's view of what is in the public interest may change, either with or without a change in circumstances." *Motor Vehicle Mfrs. Ass'n of the United States, Inc., v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 57, 103 S.Ct. 2856, 2874, 77 L.Ed.2d 443, 466 (1983) (citation omitted). *See also City of Alma v. United States,* 744 F.Supp. 1546, 1561

---

**3.** Describing the doctrine of res judicata, one administrative law treatise stated:

> In *res judicata* the first judgment is conclusive, not only on all matters which were actually litigated, but on all matters which could have been litigated. This is because the effect of the first judgment was to extinguish the cause of action. *Where the subsequent suit is on a different cause of action, these principles cannot operate.*

1 CHARLES H. KOCH, JR, ADMINISTRATIVE LAW AND PRACTICE § 6.63 at 510 (1985) (emphasis added).

Thus, as an example, if subsequent to our decision in *Brookings II,* Brookings–Lake (now ITC) had brought another action on those *same facts* but raising a new issue that could have been decided on those facts, res judicata would apply to bar the second action.

**4.** Letter from S.D. Public Util. Comm'n (May 3, 1993) (informing the court that PUC would not file a brief and that Telephone Company would defend the PUC decision).

(S.D.Ga.1990) ("An agency is not forever bound by its prior determinations, as its view of what is in the public interest may change, even if the circumstances do not.").

### 3. Decision

In *Brookings II,* this court decided that the property right of ITC, if any, surrounding a municipality is a very qualified right, available to ITC only if it is in fact serving a customer in the area to be annexed. In effect, if ITC is not serving a customer in the area to be annexed, it has no absolute property right in that area. *See Brookings II,* 430 N.W.2d at 578 ("SDCL 49–31–20 limits City's ability to expand telephone services into annexed areas which are occupied or served by another telephone company.... [A]n annexed area is 'occupied and served by another telecommunications company,' under SDCL 49–31–20, when a telephone company already serves one or more customers in the annexed area."). This court fully reviewed SDCL 49–31–20, and concluded that PUC's interpretation of SDCL 49–31–20 was "consistent with both the legislative intent and the underlying policy considerations of the statutes for balancing the competing interests involved." 430 N.W.2d at 578. Therefore, for those reasons, this court affirmed the PUC in *Brookings II.*[5]

■ In this case, the majority of the PUC Commissioners chose not to modify their previously affirmed definition of an area "occupied and served by another telecommunications company" under SDCL 49–31–20. *Id.* In its opinion in this case, the PUC stated its previous decision in *Brookings II,* and this court's subsequent affirmance, provided precedent for its conclusion of law—it did not claim it was unequivocally bound by that precedent.

Under different facts and circumstances "consistent with both the legislative intent and the underlying policy considerations of the statutes for balancing the competing interests involved," the PUC's definition of an area "occupied and served by another telecommunications company" may have changed. *Id.* When the facts of a particular case tip the balance of those competing interests, the PUC may choose to modify its definition—and such modification could be appealed to this court. Until the PUC, however, is called upon to interpret SDCL 49–31–20 [6] and SDCL 49–31–21 as amended, the definition affirmed in *Brookings II* stands as precedent.

ITC is *not* serving a customer in the area annexed AND it has no property right in that area. Therefore, this is a matter properly regulated by the PUC and the PUC regulated it properly. The facts of this case are controlled by the precedent of *Brookings II* and the 2–1 decision of the PUC. We affirm.

MILLER, C.J., and HENDERSON, J., concur.

WUEST and AMUNDSON, JJ., dissent.

WUEST, Justice (dissenting).

1. *The Public Utilities Commission is not properly bound by precedent in a similar matter.*

The pivotal issue in this case is whether an administrative agency—a public service commission charged with the protection of the consuming public—is bound by precedent in a similar matter. In the present case, the

---

5. As we stated in *Brookings II:*
 The interpretation offered by Coop would preclude City from any further expansion of telephone service into newly annexed areas, since the entire city is surrounded by Coop's service area. Such an absolute prohibition would be inconsistent with the provisions of SDCL 49–31 and SDCL 9–41.
 430 N.W.2d at 578.

6. SDCL 49–31–20 was rewritten in 1992 and now provides:
 No person who owns telecommunications facilities in this state may consolidate with or

hold a controlling interest in the stock, bonds or assets of another telecommunications company owning a competing line, switch, exchange or other telecommunications facilities.
 A person may file with the commission an application to consolidate or merge telecommunications companies. If the commission finds after an investigation, notice and, with or without, public hearing that the public interest will be benefited by the consolidation or merger, the commission may issue a permit granting the consolidation or merger.

record shows that the members of the PUC incorrectly felt strictly bound by precedent. Thus, the decision of the PUC in this matter was based on an error of law. This error is compounded by the majority's refusal to allow the commissioners to decide this matter unbounded by the shackles of stare decisis.

The record shows that the two PUC members voting in favor of the transfer felt that they were bound to do so by a previous decision of this court, *Brookings II*, 430 N.W.2d at 575. At the time of the hearing, the commissioners were advised by PUC's general counsel:

> Does the Commission want to deliberate this? *Let me make a recommendation first,* and then we can decide whether or not we want to deliberate. First, I believe there's *clear precedent* on this issue [citing Brookings II]. This is one of those rare cases where we have even Court precedent for the Commission's prior decision. I think *the facts are very similar* to that prior decision. Therefore, the Commission should grant the application of [Telephone Company] in this matter, also.

(Emphasis added.) Thus, based on counsel's advice that there was "clear precedent" and since "the facts are very similar" the commissioners did not deliberate but cast their votes immediately. When casting his vote, one of the PUC commissioners (Chairman Burg) stated: "I am disturbed by the ease with which I think certified territories are being able to be shifted, but I think as [PUC] counsel said, the precedent that was set ... *I don't believe gives us much latitude at this time[.]*" (Emphasis added.) Commissioner Stofferahn also voted "based upon past Commission precedent." Clearly, both of these PUC members incorrectly felt bound by PUC precedent. As noted in the majority opinion, both the PUC Conclusion of Law #2 and the letter from PUC counsel indicate that "precedent" served as the basis for the decision. The PUC's Conclusion of Law #2 states:

> The Commission's Decision and Order in Docket F–3555 and the Supreme Court's affirmance of that decision in *Brookings–Lake Telephone Company v. City of Brookings,* 430 N.W.2d 575 (S.D.1988) *pro-vide precedent* for its decision in this docket.

(Emphasis added.) Only Commissioner Schoenfelder stated that she "was not concerned about overturning a precedent" when she cast her dissenting vote.

As noted in the majority opinion, the U.S. Supreme Court has stated that an administrative agency may change its view of what "is in the public interest," even when the circumstances do not change. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 57, 103 S.Ct. at 2873, 77 L.Ed.2d at 466. Likewise, state courts facing this issue have made similar determinations. Wisconsin courts have noted that, "Quasi-judicial agencies such as the Public Service Commission are not subject to rule of *stare decisis[.]*" *Wisconsin Power & Light Co. v. Public Serv. Comm'n of Wis.,* 148 Wis.2d 881, 437 N.W.2d 888, 891 (App.1989) (citing *Union State Bank v. Galecki, Banking Comm'r,* 142 Wis.2d 118, 417 N.W.2d 60, 63 (App.1987)). Further, an agency may not only "reopen and reconsider its orders on particular problem ... but it may also adopt or entertain a different view of the law in subsequent cases." *Union State Bank,* 417 N.W.2d at 63 (citing *Fond du Lac v. Dep't of Natural Resources,* 45 Wis.2d 620, 173 N.W.2d 605, 608 (1970); *State ex rel. Schleck v. Zoning Bd. of App.,* 254 Wis. 42, 35 N.W.2d 312, 313 (1948)). *See also Nick v. State Hwy. Comm'n,* 21 Wis.2d 489, 124 N.W.2d 574, 577 (1963), *cert. denied,* 376 U.S. 963, 84 S.Ct. 1125, 11 L.Ed.2d 981 (1964) (stating that an administrative agency is not bound by its prior determinations); *Robertson Transp. Co. v. Public Serv. Comm'n,* 39 Wis.2d 653, 159 N.W.2d 636 (1968) (holding that inconsistencies in determinations arising by comparison are not proof of arbitrariness or capriciousness).

Similarly, the Supreme Court of Utah has discussed the role of a public service commission as a decision-making body:

> Administrative agencies must, and do, have the power to overrule a prior decision when there is a reasonable basis for doing so.... "Certainly an administrative agency which has a duty to protect the public interest *ought not be precluded from improving its collective mind should it find*

*that a prior decision is not now in accordance with its present idea of what the public interest requires."*

Salt Lake Citizens Cong. v. Mountain States Tel. & Tel. Co., 846 P.2d 1245, 1253 (Utah 1992) (quoting *Reaveley v. Public Serv. Comm'n,* 20 Utah 2d 237, 436 P.2d 797, 800 (1968) (emphasis added)). *See also Williams v. Public Serv. Comm'n of Utah,* 754 P.2d 41, 52 (Utah 1988) (stating that administrative agencies are free of limitations of stare decisis as they apply in the judicial setting) (citing KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE §§ 20.9, at 31–33; and § 20.-11, at 37–43 (2d ed. 1983); 2 AM.JUR.2D *Administrative Law* § 478 (1962)).

A California court discussed the importance of why an administrative agency concerned with the public interest not be bound by stare decisis:

> An administrative agency concerned with furtherance of the public interest is not bound to rigid adherence to precedent. "The [agency's] view of what is best in the public interest may change from time to time. *Commissioners themselves change, underlying philosophies differ, and experience often dictates changes."* [Citations omitted.]
>
> Indeed, government could not properly function if administrators were bound in perpetuity to initial determinations, and the lessons of experience and the input of varied personnel could not influence and enrich government policy.

Safeco Ins. Co. of Am. v. Garamendi, Ins. Comm'r, 21 Cal.App.4th 1428, 14 Cal.Rptr.2d 621, 628 (2 Dist.1992), *rev. granted,* 18 Cal. Rptr.2d 129, 848 P.2d 244 (1993) (emphasis added). Similarly, the Idaho Supreme Court quoted with approval from an administrative law treatise: " '[w]hen purpose is one of regulatory action, as distinguished from merely applying law or policy to past facts, agency must at all times be free to take such steps as may be proper in the circumstances irrespective of its past decisions. *Even when conditions remain same, administrative understanding of those conditions may change, and the agency must be free to act.'"* Washington Water Power Co. v. Idaho Pub. Util. Comm'n, 101 Idaho 567, 617 P.2d 1242,

1254 (1980) (quoting from KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 18.09 at 610 (1958)) (emphasis added). *See also Motor Cargo v. Public Serv. Comm'n of Nev.,* 108 Nev. 335, 830 P.2d 1328, 1330 (1992) (noting that failure to follow some prior decisions is not an abuse of discretion because administrative agencies are not bound by stare decisis); *Central Ark. Auction Sale, Inc. v. Bergland,* 570 F.2d 724, 727 (8th Cir.1978), *cert. denied,* 436 U.S. 957, 98 S.Ct. 3070, 57 L.Ed.2d 1121 (1978) (citing *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 765–66, 89 S.Ct. 1426, 1429–30, 22 L.Ed.2d 709 (1969)) ("[A]n agency is not precluded from announcing new principles in an adjudicative proceeding."); *Citizens Util. Co. of Ill. v. Illinois Commerce Comm'n,* 153 Ill.App.3d 28, 105 Ill.Dec. 849, 504 N.E.2d 1367 (1987), *aff'd,* 124 Ill.2d 195, 124 Ill.Dec. 529, 529 N.E.2d 510 (1987) (stating that "an administrative agency is not absolutely bound by its prior determinations" and "may adjust its standards and policies in light of experience").

This court "has long recognized the value of this doctrine [of stare decisis]; but at the same time we have not been blind to its theoretical inherent premise of being in harmony with extant public policy." *Hunt v. Hunt,* 309 N.W.2d 818, 822 (S.D.1981). As noted by present Chief Justice Miller:

> What may be considered a just disposition of a dispute at one state of history may not be at another stage, considering social, economic and other conditions of society. *The principle of stare decisis was not meant to keep a stranglehold on developments which are responsive to new values, experiences and circumstances.*

Owen v. Owen, 444 N.W.2d 710, 715 (S.D. 1989) (Miller, Henderson and Sabers, JJ., concurring specially) (quoting *Hofer v. Meyer,* 295 N.W.2d 333, 337–38 (S.D.1980) (Wuest, Cir.J., concurring specially)). However, the majority opinion will have the effect of putting a "stranglehold" on our state administrative agencies charged with serving the public interest. Once an agency announces a decision, especially if it is affirmed

by a court on appeal, the agency will be bound by that decision forever.

Any fears that an administrative agency can change its position on a whim are unfounded. State courts holding that administrative agencies are not bound by stare decisis have emphasized that an agency may not change its position on an issue arbitrarily or capriciously. When an agency alters its stance on an issue, the court should uphold this departure from precedent if the agency gives a "reasoned explanation" for the new position. *City of Alma,* 744 F.Supp at 1561. *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 57, 103 S.Ct. at 2874, 77 L.Ed.2d at 466 (stating that "an agency changing its course must supply a reasoned analysis"). Departures from precedent should be "explicitly and rationally justified." *Michigan v. Thomas,* 805 F.2d 176, 184 (6th Cir.1986) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973) (plurality opinion); *Ohio Fast Freight, Inc. v. United States,* 574 F.2d 316, 319 (6th Cir. 1978)). Further, departures from precedent should not be arbitrary or capricious. *In re Peoples Natural Gas Co.,* 413 N.W.2d 607, 615 (Minn.App.1987); *Citizens Util. Co. of Ill.,* 105 Ill.Dec. at 852, 504 N.E.2d at 1370.[1]

This decision would not improperly empower the PUC or any other state administrative agency to overturn a rule of law made by this court. As stated in the PUC's Conclusion of Law # 2 (as quoted in the majority opinion) we *affirmed* a PUC decision in *Brookings II.* That is, this court applied the standard of review as found in SDCL 1-26-36, and determined that the agency decision was not in error. A different or opposite decision by the agency may have likewise passed muster under our standards of review. Affirmance of an agency decision is not necessarily a statement by this court that the agency decision is the law.

The PUC commissioners should be free to consider each matter that comes before it on its merits, and make decisions in light of what course of action best serves the public interest at that time. "The primary purpose of the public utility laws in this state is the protection of the consuming public." *Wisconsin Environ. Decade, Inc. v. Public Serv. Comm'n of Wis.,* 81 Wis.2d 344, 260 N.W.2d 712, 715–16 (1978) (citations omitted). A public service agency should not be "forever bound" to its own prior determinations. This matter should properly be reversed and remanded to the PUC for reconsideration.

2. *The transfer of certificated service territory from one telephone company to another constitutes a taking of valuable property, thereby requiring due process and just compensation.*

ITC urges that the right to provide future service in an area, even where there are no present customers, is a valuable property right. As such, the transfer of those service rights to Telephone Company constitutes a taking, which must be subject to considerations of due process and just compensation. In the dissenting opinion of Commissioner Schoenfelder, she stated:

> [The PUC] and the Supreme Court, in their previous decisions, have failed to consider the property interests or the value of future service rights that a telecommunications company has in its assigned territory[.] Even though a territory may not presently have any customers, all assigned territories have the potential for future customer growth. Such potential growth is of value to the company that is assigned that territory and should be considered and compensated whenever a company's service rights are taken away[.]

Telephone Company argues that because the right to provide future telephone service in a given area is not an unqualified property right, that there has been no taking of property in this case. The majority opinion wrongly holds that because ITC is not serv-

---

1. Similarly, another administrative law treatise states:

> Administrative agencies are, in general, not bound by [the] doctrine [of stare decisis]. An agency is free to change prior rulings and decisions so long as such action is not done

capriciously or arbitrarily. The courts recognize that agencies must be free to change prior policies and actions; otherwise, effective enforcement of statutes will be frustrated.

4 JACOB A. STEIN ET AL., ADMINISTRATIVE LAW § 40.02 at 40–19 to –20 (1992).

ing a customer in the area to be annexed, it has no "absolute property right"; thus, due process and just compensation are not forthcoming to ITC.

In a discussion of the nature of property and property rights, Judge Posner noted that "property under the due process clause is *any interest* to which a government has given someone an entitlement." *Patterson v. Portch*, 853 F.2d 1399, 1405 (7th Cir.1988) (emphasis added) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). *We have previously noted that a franchise granted to a telephone company "constitutes a valuable[,] alienable and taxable property right," even where it is not perpetual or exclusive in nature.* *Brookings I*, 177 N.W.2d at 491. Similarly, the U.S. Supreme Court has stated that the right to use the streets of a city to operate a telephone company is property; as such, it was taxable, alienable and transferable. *City of Louisville v. Cumberland Tel. & Tel. Co.*, 224 U.S. 649, 661, 32 S.Ct. 572, 575, 56 L.Ed. 934, 939 (1912). The court stated:

> In considering the duration of such a franchise it is necessary to consider that a telephone system cannot be operated without the use of poles, conduits, wires and fixtures. These structures are permanent in their nature and require a large investment for their erection and construction. To say that the right to maintain these appliances ... could be revoked at will, would ... defeat the State's purpose to secure a telephone system for public use. For, manifestly, no one would have been willing to incur the heavy expense of installing these necessary and costly fixtures if they were removable at will of the city and the utility and value of the entire plant be thereby destroyed.

224 U.S. at 663–64, 32 S.Ct. at 576, 56 L.Ed. at 940.

We recently reiterated that our Constitution provides, " '[n]o person shall be deprived of life, liberty or property without due process of law' and that no '[p]rivate property shall be taken for public use, or damaged, without just compensation....' " *U.S. West Commun.*, 505 N.W.2d at 126 n. 24 (quoting S.D. CONST. art. VI, §§ 2, 13; and citing *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897) (noting that U.S. CONST. amend. V prohibition against taking of private property without just compensation is made applicable to the states via U.S. CONST. amend. XIV.)).

South Dakota statutes set out "due process" to be followed when one telephone company desires to extend its service area into that of another telephone company. SDCL 49–31–21.[2] Pertinent language of the statute states:

> If the proposed location of a facility is in the local exchange territory [previously] assigned [to another telephone company], the commission may allow the proposed facility *only upon the additional finding that the local exchange company operating the existing facility is not furnishing reasonably adequate telecommunications service and will not furnish reasonably adequate service within a reasonable time.*

SDCL 49–31–21 (emphasis added). We have held that SDCL 49–31–21 does apply to a municipal telephone company. *Brookings II*, 430 N.W.2d at 577. *See* SDCL 49–31–2 (stating that telecommunications statutes apply to all telecommunications companies). However, the necessity of the PUC's making such an "additional finding" is easily circumvented in the circumstances of the present case, by annexing a vacant parcel of land under SDCL 9–4–1; and because of SDCL 9–41–1, which authorizes a city to establish a telephone system "for its inhabitants." Where two non-municipal telephone companies are serving adjacent areas, one cannot claim vacant land previously assigned to the second company as its territory, simply by an annexation procedure. The protections of SDCL 49–31–20 and –21 imply that the legislature viewed assigned telephone franchise

---

**2.** A related statute, SDCL 49–31–20 was revised in 1992. Prior language of the statute, in existence at the inception of this dispute, stated that a new telephone company may not move into a territory "already occupied and served by anoth-

er telecommunications company[.]" The PUC found that "occupied and served" meant that at least one customer must already exist in the territory. *Brookings II*, 430 N.W.2d at 578.

service areas as a valuable property right, the transfer of which from one telephone company to another must be accorded due process. The legislature could not have intended these statutes to become meaningless simply because a municipal telephone company is involved.

The record shows that ITC attempts to plan for future growth and makes significant investment in plant and equipment to provide service to present and future customers. As pointed out by the dissenting PUC member, the land encompassed by Parcel Four—the Industrial Park Property—was previously within ITC's assigned service area. Any businesses that would have located on this property would have been ITC customers, potentially large sources of revenue for ITC, until the annexation and transfer of service area to Telephone Company. Rather than plan for any future growth or make any related investments under the present scheme—and under the decision announced in the majority opinion—ITC might do better to simply surrender any of its presently assigned service area near Brookings to Telephone Company now, as history has shown that ITC will be precluded from participating in any growth in demand for telecommunications services in the Brookings area. The majority opinion assures that ITC will be precluded from participation in any such growth in the area surrounding Brookings. Assigned service area with the potential for future growth and revenue is a valuable property right. The PUC may "exercise powers necessary to properly supervise and control" telephone companies. SDCL 49–31–3. This case should be remanded so that the PUC may properly apply the due process protections afforded by SDCL 49–31–20 and –21, and hold proceedings to determine the amount of just compensation to be paid to ITC for any taking of its assigned service area.

AMUNDSON, J., joins this dissent.