STATE of Wisconsin, Plaintiff-Respondent,

v.

WAUSHARA COUNTY BOARD OF ADJUSTMENT,
Defendant,

G. Edwin HOWE and Suzanne Howe, Intervenors-
Defendants-Appellants-Petitioners.

Supreme Court

*No. 02–2400. Oral argument December 4, 2003.—Decided
May 18, 2004.*

2004 WI 56

(Also reported in 679 N.W.2d 514.)

For the intervenors-defendants-appellants-petitioners there were briefs by *Brian W. McGrath, Erik G. Weidig* and *Foley & Lardner,* Milwaukee, and oral argument by *Brian W. McGrath.*

For the plaintiff-respondent the cause was argued by *P. Philip Peterson,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *Thomas D. Larson* and *Debra P. Conrad,* Madison, on behalf of the Wisconsin Realtors Association.

An amicus curiae brief was filed by *Daniel M. Olson,* Madison, on behalf of the League of Wisconsin Municipalities.

An amicus curiae brief was filed by *William P. O'Connor, Tracy K. Kuczenski, Mary Beth Peranteau*

and *Wheeler, VanSickle & Anderson, S.C.,* Madison, on behalf of Wisconsin Association of Lakes, and oral argument by *William P. O'Connor.*

¶ 1. N. PATRICK CROOKS, J. G. Edwin and Suzanne Howe (Howes) appeal a decision of the Court of Appeals, District IV, affirming the circuit court's reversal of the Waushara County Board of Adjustment's (Board) decision to grant the Howes' request for an area variance. We must resolve the following issue: In light of the interplay between *Snyder v. Waukesha County Zoning Bd. of Adjustment,* 74 Wis. 2d 468, 247 N.W.2d 98 (1976), *State v. Kenosha County Bd. of Adjustment,* 218 Wis. 2d 396, 577 N.W.2d 813 (1998), and *State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, 244 Wis. 2d 613, 628 N.W.2d 376, what is the correct legal standard to be applied by a board of adjustment when considering whether to grant an area variance? More specifically, is the correct legal standard whether the failure to receive the variance will create, for the property owner, an unnecessary hardship in light of the purposes of the zoning ordinance, or is it whether the owner will have no reasonable use of the property without a variance?

¶ 2. We conclude that, in evaluating whether to grant an area variance to a zoning ordinance, a board of adjustment should focus on the purpose of the zoning law at issue in determining whether an unnecessary hardship exists for the property owner seeking such variance. We further conclude that the facts of the case should be analyzed in light of that purpose, and that boards of adjustment must be afforded flexibility so that they may appropriately exercise their discretion. We also again emphasize and recognize the presumption that the board's decision is correct. We reaffirm

551

*Snyder*'s definition of the statutory term "unnecessary hardship" because it best encompasses the appropriate test for granting an area variance. "No reasonable use," as set forth in *Kenosha County,* is no longer applicable when an area variance is being considered. Moreover, while there is a claim that the variance implicates shoreland zoning concerns, it should be noted that the proposed addition would not bring the Howes' home any closer to Silver Lake. Thus, we reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings consistent with this opinion.

I

¶ 3. The Howes own a single family home located on a .324 acre parcel of land on Silver Lake in Waushara County. The Howes' property is bordered on the northeast by Silver Lake. State Highway 73 borders the southwest portion of the Howes' property. According to Waushara County Ordinance No. 76 § 2.14(1),[1] a 110–foot setback is required from the house on the property to Highway 73. Waushara County Ordinance No. 76 § 2.14(2)[2] further requires a 75–foot setback

---

[1] 2.14 *Setback*

. . .

(1) Highway Setback: All state and federal highways in the county are hereby designated Class A highways. . . .

Class A highway setback shall be 110 feet from the centerline of the highway or 50 feet from the right-of-way line, whichever is greater.

. . .

[2] 2.14 *Setback*

. . .

from Silver Lake's ordinary high water mark to the house. The Howes' lot is 120 feet deep. Thus, because there is no building envelope[3] on their property, it is impossible for the Howes to comply with the abovementioned ordinances.

¶ 4. Waushara County Ordinance No. 76 § 2.14(3)[4] allows for an averaged setback if there are existing homes on either side of the property in question that are built with less than the required 75–foot setback. Under § 2.14(3), the applicable setback requirement for the Howes' home is 35 feet. The Howes' home is between 30 to 34 feet from Silver Lake and, although its distance from Silver Lake is commensurate to that of its neighbors, the Howes acknowledge that it is still between one to five feet too close to Silver Lake. Nevertheless, the Howes home is not in danger of being

---

(2) Water Setback: All buildings and structures, except those enumerated below, shall be set back at least 75 feet from the ordinary high water mark of navigable waters, . . . .

[3] In using the term "building envelope," we intend to refer to the fact that there is no space on the Howes' property in which a building can be constructed that would comply with both of the applicable setback requirements.

[4] 2.14 *Setback*

. . .

(3) Reduced Building Setback: A setback less than that required by Section 2.14(1) or (2) may be permitted by the Zoning Administrator where there is at least one dwelling on either side of the applicant's lot, within 200 feet of the proposed site built to less than the required setback. In such case, the setback shall be the average of the nearest dwelling on each side of the proposed site or, if there is an existing dwelling on only one side, the setback shall be the average of the existing building's and the required setback. In no case shall averaging allow a setback of less than 35 feet from the ordinary high water mark. . . .

destroyed. Because their home existed prior to the enactment of the ordinance, it is a legal nonconforming structure.[5]

¶ 5. Although the Howes primarily use their home as a seasonal residence, their long-term goal is to use the property as their primary residence in retirement. To this end, they acquired the adjoining lot and tore down the existing structure on the lot, so as to provide enough space for the construction of a small barn. In 1989, the Howes began a series of improvements to transition their home into a place suitable for retirement. The Howes' first improvement connected the existing garage on their property to their home. In 1994, the Howes added a second story to their home and constructed a roof over an existing deck. These improvements did not bring the Howes' home any closer to Silver Lake. In each case, the Howes request for a variance was granted. For their most recent improvement plans, the Howes applied for a building permit to construct a 10–foot by 20.5–foot addition to their living room and to build a 4–foot by 10–foot porch, which would extend their existing outside porch to the edge of their home once the living room addition was constructed. The Howes were denied the permit, pursuant to Waushara County Ordinance No. 76 § 2.10(2)(b),[6]

---

[5] 2.10 *Nonconforming Structures and Uses*

(1) Continued Use: Any nonconforming building, structure or use which existed lawfully at the time of the adoption of this ordinance or amendment thereto may be continued although such building or use does not conform with the provisions of ordinance subject to the limitations listed in Section 2.10(2).

. . .

[6] 2.10 *Nonconforming Structures and Uses*

. . .

because the cumulative value of their previous improvements was in excess of 50 percent of their home's equalized assessed value.[7]

¶ 6. In 2001, the Howes requested that the Board grant them a variance from Waushara County Ordinance No. 76 § 2.10(2)(b). Before the hearing regarding the Howes' variance request, the Board viewed the Howes' property and noted that the proposed construction would not bring the home any closer to Silver Lake. The Board held a hearing and ultimately approved the Howes' variance application in accordance with Waushara County Zoning Ordinance No. 76 § 25.05.[8] The Board concluded that enforcing the exact terms of

(2) Limitations:

. . .

(b) No nonconforming structure or use during its total lifetime shall be enlarged or expanded in excess of 50% of its equalized assessed value over the life of the structure or project unless permanently changed to conform with the regulations of this ordinance. . . .

[7] While the dissent focuses on the fact that the Howes' home was near the shore of Silver Lake, we feel that it bears further emphasis that the Howes sought a variance from the 50 percent rule in § 2.10(b), which relates to nonconforming structures and uses, not from the shoreland zoning provisions, which are in Section 3 of Waushara County Zoning Ordinance 76, entitled "Waushara County Floodplain Ordinance." Section 3 of that ordinance is entitled "General Shoreland Provisions" and encompasses what would generally be known as the shoreland zoning ordinance for Waushara County.

[8] § 25.05 *Principles Guiding Board Decisions*

The following are principles that shall guide the County Board of Adjustment:

(1) The burden is upon the appellant to prove the need for a variance.

the zoning ordinance would result in unnecessary hardship for the Howes. Using its powers under Wis. Stat. § 59.694(7)(c) (2001–02),[9] the Board granted the variance.

(2) Pecuniary hardship, loss of profit, self-imposed hardships, such as that caused by ignorance, deed restrictions, proceeding without a permit, or illegal sales, are not sufficient reasons for granting a variance.

(3) The Board is bound to accept the zoning ordinance and map as being correct.

(4) The plight of the appellant must be unique, such as a shallow or steep parcel of land, or situation caused by other than his own action.

(5) The hardship justifying a variance must apply to individual appellants parcel or structure and not generally to other properties in the same district.

(6) The variance must not be detrimental to adjacent properties.

(7) The Board of Adjustment in fulfilling its duties may modify, alter, or change any application.

[9] Unless otherwise indicated, all references to Wisconsin Statutes are to the 2001–02 edition.

Wisconsin Stat. § 59.694(7)(c) County zoning, adjustment board.

(7) Powers of Board. The board of adjustment shall have all of the following powers:

. . .

(c) To authorize upon appeal in specific cases variances from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

. . .

¶ 7. At the request of the Department of Natural Resources (DNR), the State filed a complaint for certiorari review in Waushara County Circuit Court in accordance with Wis. Stat. § 59.694(10).[10] The State asserted that it was aggrieved by the Board's decision to grant the Howes' variance because, pursuant to Wis. Stat. §§ 59.692 and 281.31, the DNR requires adherence to specific standards for protecting the shorelands of Wisconsin's navigable waters. The State contended that Waushara County Ordinance No. 76 § 2.10(2)(b) was required, in accordance with § 59.692(1m),[11] to zone all shorelands in an unincorporated area, in order to protect Wisconsin's shorelands. The Howes intervened in the State's suit against the Board.

¶ 8. The Waushara County Circuit Court reversed the Board's decision, which resulted in the denial of the Howes' variance application. Even though the Howes' variance request was based on the 50 percent rule, the court reasoned that shoreland zoning concerns were

[10] Wisconsin Stat. § 59.694(10) County zoning, adjustment board.

> (10) Certiorari. A person aggrieved by any decision of the board of adjustment, or a taxpayer, or any officer, department, board or bureau of the municipality, may, within 30 days after the filing of the decision in the office of the board, commence an action seeking the remedy available by certiorari. . . . The court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review.

[11] Wisconsin Stat. § 59.692(1m) Zoning of shorelands on navigable waters.

> (1m) To effect the purposes of s. 281.31 and to promote the public health, safety and general welfare, each county shall zone by ordinance all shorelands in its unincorporated area. This ordinance may be enacted separately from ordinances enacted under s. 59.69.

implicated nonetheless. The court agreed with the State that the reasonable use analysis set forth in *Kenosha County* was applicable to the Howes' variance request. Even after discussing and applying Justices Crooks' and Wilcox's concurrence in *Outagamie County,*[12] the circuit court in this case reasoned that the no reasonable use standard was implicated, because of concerns over shoreland zoning. The court concluded that there was an insufficient showing by the Howes that there would be no reasonable use of their property if the variance was not granted. The court reasoned that simply because the property will be less useful or less valuable did not mean that the Howes had no reasonable use of their property, thus failing the no reasonable use test. The circuit court further concluded that there were insufficient facts in the record to establish why the Board decided to grant the Howes' variance. The court noted that it could not discern whether the Board looked at the unnecessary hardship created in light of the purpose of the ordinance, or whether it thought that the no reasonable use test was applicable to the case at hand. The Howes appealed the circuit court's decision.

¶ 9. The court of appeals' majority, Judges Deininger and Lundsten, concluded that, as stated in *State ex rel. Ziervogel v. Bd. of Adjustment,* 2003 WI App 82, ¶ 21, 263 Wis. 2d 321, 661 N.W.2d 884, *Kenosha County* requires that no reasonable use of the property must be demonstrated by the property owners before a board may grant a variance. The court of appeals rejected the

---

[12] Hereinafter, Justices Crooks' and Wilcox's concurrence in *State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, 244 Wis. 2d 613, 628 N.W.2d 376 will be referred to, for our purposes, as the *Outagamie County* concurrence.

Howes' contention that they need only show unnecessary hardship in light of the purpose of the ordinance. The court noted that the Howes did not claim that they had no reasonable use of their property, absent the grant of a variance. Thus, the court noted, the Howes could only prevail if a standard other than that enunciated in *Kenosha County* and *Ziervogel* was applied. The court of appeals concluded that the circuit court correctly applied the *Kenosha County* standard and, as a result, affirmed the circuit court's decision not to grant the Howes a third variance to improve their home.

¶ 10. In her dissent, Judge Roggensack stated that she believed that the majority incorrectly applied *Kenosha County* to the present case. She concluded that:

> [b]ecause both the plurality and the concurrence in *Outagamie County* agree that when an area variance is requested, unnecessary hardship may be shown if "compliance with the strict letter of the restrictions ... would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restriction unnecessarily burdensome," that is the test I conclude that the Board of Adjustment was bound to apply to the Howes' request and it is the test courts should apply as well.

*State of Wisconsin v. Waushara County Bd. of Adjustment,* No. 02–2400(D), unpublished slip op. (WI App May 7, 2003) (citation omitted).

¶ 11. Judge Roggensack concluded that the Board interpreted unnecessary hardship, as found in Wis. Stat. § 59.694(7)(c), to mean unnecessarily burdensome, as that was the test applied by the plurality and the concurrence in *Outagamie County* regarding area variances. Judge Roggensack reasoned that, because

there was no way for the Howes to have a structure on their property that complied with the ordinances, and since the variance was in keeping with the neighborhood, and Silver Lake would not be affected by the improvement, the Board appropriately exercised its authority in this case in granting the variance.

II

¶ 12. We now consider, in light of the interplay between *Snyder, Kenosha County,* and *Outagamie County,* what is the correct legal standard to be applied by the Board in this case when considering whether to grant the area variance. On statutory certiorari review, we limit our review to the following issues: (1) whether the Board kept within its jurisdiction; (2) whether it proceeded on the correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the Board might reasonably make the order or determination in question, based on the evidence. *Kenosha County,* 218 Wis. 2d at 410–11; *Arndorfer v. Bd. of Adjustment,* 162 Wis. 2d 246, 254, 469 N.W.2d 831 (1991). The State centers its argument on the second and fourth issues.

¶ 13. Boards of adjustment exercise discretion when determining whether a request for a variance should be granted. *State ex rel. Schleck v. Zoning Bd. of Appeals,* 254 Wis. 42, 52, 35 N.W.2d 312 (1948). Nevertheless, "board(s) of adjustment (are) not authorized to rewrite the law, but rather, to apply it." *State v. Ozaukee Bd. of Adjustment,* 152 Wis. 2d 552, 564–65, 449 N.W.2d 47 (1989). In general, we are hesitant to overrule

administrative decisions. *Snyder,* 74 Wis. 2d at 476. A board's decision is presumed to be correct and valid. *Id.* The board's findings may not be disturbed if any reasonable view of the evidence sustains such findings. *Id.* Moreover, we may not substitute our discretion for that of the board's, as committed to it by the legislature. *Id.*

¶ 14. In this case, Wis. Stat. §§ 59.694(7)(c) and 62.23(7)[13] give the Waushara County Board of Adjustment the power to grant zoning variances from Waushara County Ordinance No. 76 § 2.10(2)(b). Interpretation of ordinances and interpretation of statutes invoke the same rules. *Kenosha County,* 218 Wis. 2d at 412. Statutory interpretation is a question of law we review de novo. *VanCleve v. City of Marinette,* 2003 WI 2, ¶ 17, 258 Wis. 2d 80, 655 N.W.2d 113. Nevertheless, we benefit from the decisions of the court of appeals and the circuit court. *Id.*

¶ 15. When interpreting a statute, we first look to the plain meaning of its terms. *Id.* If the statute is unambiguous, we will not look beyond the statutory language to discern the statute's meaning. *Id.* Only when a statute is ambiguous will we examine aids such

---

[13] In relevant part, Wis. Stat. § 62.23(7) states the following:

> The board of appeals shall have the following powers: . . . to authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in practical difficulty or unnecessary hardship, so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done. . . .

as legislative history, scope, context, and subject matter. *State v. Delaney,* 2003 WI 9, ¶ 14, 259 Wis. 2d 77, 658 N.W.2d 416. "A statute is ambiguous if reasonable persons could disagree as to its meaning." *Id.*

¶ 16. The Howes contend that Wisconsin property law with respect to variances is in a state of confusion. Under *Snyder,* the Howes state that the correct test is " '(w)hether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.' " *Snyder,* 74 Wis. 2d at 475 (citation omitted). In addition, the Howes assert that the *Snyder* court correctly noted that unnecessary hardship must be determined in light of the purpose of the zoning ordinance at issue.

¶ 17. The Howes assert that in *Kenosha County,* this court concluded that, in order to prove unnecessary hardship, the property owner was required to demonstrate that she would have no reasonable use of the property, if her request for a variance was denied. The Howes contend that in *Outagamie County,* we relied on *Snyder* to define unnecessary hardship and, although we did not expressly overrule *Kenosha County,* we have done so sub silentio. Thus, the Howes assert that courts, and boards of adjustment, are unsure whether to apply the reasonable use test set forth in *Kenosha County* or the standard set forth by the *Outagamie County* plurality and concurrence.

¶ 18. The Howes contend that if the no reasonable use test of *Kenosha County* is held to be the applicable standard in variance cases, then no variances will ever be granted. The legislature intended, the Howes argue, for boards of adjustment to exercise their

discretion in deciding whether to grant requests for variances. If the legal standard for variances results in only one conclusion, the Howes contend that the Board cannot be said to be engaging in the exercise of its discretion. Even if we decline to overrule *Kenosha County*, the Howes maintain that we should make it clear that unnecessary hardship must be evaluated in light of the purpose of the zoning ordinance, as *Snyder*, *Kenosha County*, and *Outagamie County* all contain language to that effect. The Howes further argue that, despite the State's arguments to the contrary, this is not a case about a variance to the shoreland zoning rule, but rather to the 50 percent rule. The Howes contend that, at most, Waushara County Ordinance No. 76 § 2.14(2), regarding setbacks from the ordinary highwater mark of navigable waters, is only tangentially involved.

¶ 19. The State counters that this case involves a variance from a shoreland zoning ordinance; thus, the Howes must demonstrate that they have no reasonable use of their property unless the variance is granted. The State asserts that *Kenosha County* supports its position that Wis. Stat. § 59.694(7)(c)'s unnecessary hardship requirement mandates that a property owner requesting a variance must demonstrate that there is no reasonable use of the property, unless a variance is granted. The State contends that, because the Howes' situation is indistinguishable from the facts presented in *Kenosha County*, the holding in that case controls.

¶ 20. Given this allegedly applicable standard, the State argues that the Howes cannot demonstrate that they would have no reasonable use of their property, if the variance was not granted. Under Ordinance No. 76 § 25.05(1), the State maintains that the Howes have the burden of proving that they need the variance. The

State asserts that the Howes have made use of their home for quite some time and, thus, cannot prove that the new additions are necessary in order for them to have any reasonable use of their home. Because Wisconsin's navigable waters need protection against misuse and overuse, the State argues that the no reasonable use test, as applicable to shoreland variances, is intentionally hard to satisfy.

¶ 21. The State further contends that the Howes' situation is not unique, as required by Wis. Stat. § 59.694(7)(c), *Kenosha County,* and *Arndorfer,* because the shoreland setback requirements do not uniquely affect the Howes. According to the State, the Howes also have not demonstrated that their requested variance is not contrary to the public interest, as required by § 59.694(7)(intro.) and (7)(c), as the cumulative effect of these types of changes along the shoreland would adversely affect the public interest. The State further asserts that the Howes have not demonstrated that the proposed variance is in keeping with the spirit of the ordinance. Although the additions will make their retirement home more comfortable for them, the State contends that this does not mean that the Howes are entitled to their requested variance.

¶ 22. Moreover, the State maintains that the decisions in *Snyder, Kenosha County,* and *Outagamie County* are consistent and do not need to be clarified. The State rejects the Howes' contention that the no reasonable use standard prevents the Board from exercising its discretion in deciding whether to grant a request for a variance. Finally, the State points out that it would limit the holding of *Outagamie County* to the specific facts of that case; namely, it would make it only applicable to "variances for residential basements built below the regional flood elevation and to situations

where the county is estopped from enforcing the applicable floodplain zoning ordinance."[14]

¶ 23. In this case, it is our intention to provide needed clarification for property law in Wisconsin, with respect to the granting of area variances.[15] It is evident that there is some confusion over how to interpret and apply our decisions in *Snyder, Kenosha County,* and *Outagamie County. See Voss v. Waushara County Bd. of Adjustment,* No. 02–1307, ¶ 13, n.5, unpublished slip op. (WI App Apr. 17, 2003).[16] We take this opportunity to explain the appropriate legal standard that should be used in deciding whether to grant area variances. In doing so, it is our goal to give boards of adjustment and

---

[14] The State also contended that the Board made legally insufficient findings of fact when it decided to grant the Howes' variance. We conclude that there is no need to address this issue, as we remand the cause to the circuit court for further proceedings consistent with this opinion.

[15] In *Outagamie County,* we set forth the following explanation regarding the differences between use and area variances:

> "A use variance is one that permits a use other than that prescribed by the zoning ordinance in a particular district. An area variance has no relationship to a change of use. It is primarily a grant to erect, alter, or use a structure for a permitted use in a manner other than that prescribed by the restrictions of a zoning ordinance."

> *Outagamie County,* 244 Wis. 2d 613, ¶ 34 (citing 3 E.C. Yokley, *Zoning Law and Practice* § 21–6 (4th ed. 1979)).

[16] Pursuant to Wis. Stat. (Rule) § 809.23(3), unpublished decisions of the court of appeals do not have precedential value and may not be cited as precedent. However, we cite this case simply to present an example of a case where the court of appeals has asked for our guidance in clarifying the law with respect to area variances.

Wisconsin courts sufficient guidance as to how to resolve these types of cases in the future.

¶ 24. We begin our analysis by looking to the concurrence in *Outagamie County*. The concurrence set forth four major principles that should inform courts' decisions when reviewing variance cases. The principles are: (1) a presumption exists that the board's decision is correct; (2) in deciding whether to grant a variance, there should be a focus on the purpose of the ordinance or statute being analyzed; (3) the facts of the particular case should be analyzed in light of the purpose of the ordinance or statute; and (4) boards of adjustment must be afforded some flexibility so that they may appropriately exercise their discretion. We will address each principle in turn and, in the process, hopefully harmonize the other zoning decisions of this court, including both *Snyder* and *Kenosha County*, with *Outagamie County*.

¶ 25. First, it was stated in *Outagamie County* that the board's decision is given a presumption of correctness and validity. *Outagamie County*, 244 Wis. 2d 613, ¶ 76 (Crooks, J., concurring). We have consistently recognized this standard in several cases. *See Snyder*, 74 Wis. 2d at 476 ("the findings of the board may not be disturbed if any reasonable view of the evidence sustains them."); *Arndorfer*, 162 Wis. 2d at 253 ("a court shall accord a presumption of correctness and validity to the Board's decision."); *Kenosha County*, 218 Wis. 2d at 415 ("Reviewing courts accord a decision of a board of adjustment a presumption of correctness and validity."); and *Outagamie County*, 244 Wis. 2d 613, ¶ 26 ("a reviewing court is required to defer to the decision of the board unless it is 'unreasonable or without a rational basis. . . . Thus, the findings of the board may not be disturbed if any reasonable view of the evidence sus-

tains them.' "). Thus, it is clear that reviewing courts will overrule a board's decision only when it is unreasonable or irrational.

¶ 26. Second, boards must focus on the purpose of the ordinance or statute in question when deciding whether to grant a variance. More specifically, boards must consider whether a property owner's failure to receive a variance will cause the property owner an unnecessary hardship in light of the purpose of the ordinance. Wisconsin Stat. § 59.694(7)(c) provides boards of adjustment with the power to grant variances to zoning ordinances "that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."[17] We have stated that unnecessary hardship is present when " 'compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.' " *Snyder,* 74 Wis. 2d at 475 (citing 2 Rathkopf, *The Law of Zoning and Planning* 45—28 (3d ed. 1972)).

¶ 27. In *Outagamie County* it was stated that "(w)hether an area or use variance should be granted depends upon the purpose underlying the specific provision of the zoning code to which a variance is being

---

[17] In answer to the claims of the dissent, ¶¶ 51–53, we emphasize that all of the components, including the public interest component, of this standard remain intact. Boards must consider the impact that a proposed variance will have on the public interest.

sought." *Outagamie County,* 244 Wis. 2d 613, ¶ 72 (Crooks, J., concurring). *See also Snyder,* 74 Wis. 2d at 473. This observation was explained in other cases before *Outagamie County.* In fact, both *Snyder* and *Kenosha County* recognized that examination of the statute or ordinance's purpose was an important step in analyzing the bigger question of whether to grant a variance. This requirement relating to purpose will be more fully explored later in this opinion.

¶ 28. Third, the facts of a particular case must be analyzed in light of the purpose of the statute. In the *Outagamie County* case, it was noted that the board in that case did not analyze the purpose underlying the ordinance in question. *Outagamie County,* 244 Wis. 2d 613, ¶ 76 (Crooks, J., concurring). It was stated that *Kenosha County*'s no reasonable use standard "should have been applied by the Board only after considering the purpose of the zoning ordinance, and the nature of the specific restriction at issue." *Id.* It was further stated that because the board in that case did not evaluate the facts in light of the purpose of the ordinance in question, remand may have been appropriate.[18] *Id.,* ¶ 77. In noting that facts must be analyzed in light of the purpose of the zoning ordinance, a new standard was not being created. Instead, the standard this court has elucidated in previous cases involving variances was merely being applied.

---

[18] Ultimately, the concurrence decided that remand was not necessary, as the board properly decided that a variance should be granted, because the property owners' hardship was created by the town. *Outagamie County,* 244 Wis. 2d 613, ¶ 77.

¶ 29. Our decision in *Snyder* clearly contemplated that the purpose of an ordinance should be taken into account when determining whether to grant a variance. In *Snyder* we discussed the fact that it is often more difficult to obtain a use variance than an area variance, and we concluded:

> [T]he fact that area variances are considerably easier to obtain than use variances creates the impression that a minimal showing of difficulty will establish the element of practical difficulty and entitle the landowner to a variance. However, area variances are not more easily obtained because practical difficulties are something much less severe than unnecessary hardship, but because area variances do not involve great changes in the character of neighborhoods as do use variances. *This relates to what hardships or practical difficulties may be considered unnecessary or unreasonable in light of the purpose of the zoning law.*

*Snyder,* 74 Wis. 2d at 473 (emphasis added).

¶ 30. In *Snyder,* we then stated that the appropriate test for unnecessary hardship relating to area variances was " '[w]hether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.' " *Id.* at 475 (citation omitted).

¶ 31. In *Kenosha County,* we explained that our reason for adopting the State's no reasonable use test was because it best took into account the purpose of the statute in question. We stated:

> The fundamental difference between the parties' definitions of the unnecessary hardship standard is the

extent to which those definitions incorporate the purpose of the shoreland zoning regulations—to enforce a uniform setback that preserves the public's interest in shoreland and the navigable waters of the state. Under the State's definition, the issue is whether the Board and reviewing courts look first to the purpose of the shoreland zoning ordinance and then at the applicant's request. The Board seems to argue that the reviewing bodies look at the applicant's request primarily in terms of the burden on the applicant. In both our *Snyder* and *Arndorfer* decisions, we emphasized that the purpose of the zoning regulations, including uniformity, should not be lost in the determination of whether to grant a variance.

*Kenosha County,* 218 Wis. 2d at 413.

¶ 32. When we consider the emphasis on purpose that we find in *Kenosha County,* it appears that the no reasonable use standard has been applied, since that case, in a very restrictive manner. *See Ziervogel,* 263 Wis. 2d at 321; *Voss v. Waushara County Bd. of Adjustment,* No. 02–1307, unpublished slip op. (WI App Apr. 17, 2003); and *Waushara County Bd. of Adjustment,* No. 02–2400, unpublished slip op. (WI App May 7, 2003).[19] Although this court adopted the no reasonable use standard proffered by the State, we did so after considering the purpose of the zoning ordinance in question. Insofar as it acknowledged that the purpose of the zoning ordinances must be taken into account when deciding whether to grant a variance, *Kenosha County*

---

[19] Pursuant to Wis. Stat. (Rule) § 809.23(3), unpublished decisions of the court of appeals do not have precedential value and may not be cited as precedent. However, we cite these cases simply to present examples of cases where the court of appeals has interpreted the no reasonable use test too restrictively.

is wholly consistent with the reasoning regarding a focus on the purpose of the ordinance set forth in *Snyder* and *Outagamie County.* In light of the above-mentioned cases, it is evident that this court has consistently noted that the purpose of a zoning ordinance should not be lost sight of when determining whether the variance requested should be granted. We find no need to accept the Howes' invitation to overrule *Kenosha County.* Rather, the term "no reasonable use," as set forth in *Kenosha County,* is no longer applicable when consideration is being given to whether to grant an area variance. We reaffirm *Snyder*'s definition of the statutory term "unnecessary hardship" because it best encompasses the appropriate test for granting an area variance.

■■■

¶ 33. Finally, a board must be able to exercise its discretion when deciding whether to grant a variance. The concurrence stated that "county boards of adjustment have some very real flexibility in granting variances." *Outagamie County,* 244 Wis. 2d 613, ¶ 74 (Crooks, J., concurring). It was also noted that this flexibility is reflected in the fact that boards' decisions are given a presumption of validity and correctness. *Id.,* ¶ 75. *See also Kenosha County,* 218 Wis. 2d at 415–16. The plurality in *Outagamie County* noted that "(a) reviewing court may not substitute its discretion for that of the board, the entity to which the legislature has committed these decisions." *Outagamie County,* 244 Wis. 2d 613, ¶ 25. *See also Snyder,* 74 Wis. 2d at 476, *Kenosha County,* 218 Wis. 2d at 415. Even in *Schleck,* which preceded *Outagamie County* by over 50 years, we stated that a board exercises its discretion when deciding whether to grant a variance. *Schleck,* 254 Wis. 2d at 52. We realize that this final principle is closely akin to

the first principle set forth in this opinion, namely that boards' decisions have a presumption of correctness. Nevertheless, we feel that the notion that boards should have flexibility is sufficiently important so as to warrant mentioning it as a separate principle.

¶ 34. We conclude that the reasoning discussed herein provides the appropriate standard for determining whether an area variance should be granted.[20] Unnecessary hardship, as set forth in Wis. Stat. § 59.694(7)(c), must be evaluated in light of the purpose of the zoning ordinance at issue.

### III

¶ 35. We conclude that, in evaluating whether to grant an area variance to a zoning ordinance, a board of adjustment should focus on the purpose of the zoning law at issue in determining whether an unnecessary hardship exists for the property owner seeking such variance. We further conclude that the facts of the case should be analyzed in light of that purpose, and that boards of adjustment must be afforded flexibility so that they may appropriately exercise their discretion. We also again recognize and emphasize the presumption that the board's decision is correct. We reaffirm *Snyder*'s definition of the statutory term "unnecessary

---

[20] We note that this opinion should be read together with our decision in *State ex rel. Richard W. Ziervogel v. Washington County Bd. of Adjustment,* 2004 WI 23, 269 Wis. 2d 549, 676 N.W.2d 401, which was released earlier this term of the court.

We further point out that this case is being remanded to the circuit court, and this court is not granting the Howes' variance request. Instead, we have clarified the appropriate standard for the Board to apply when it exercises its discretion to determine whether such variance request should be granted.

hardship" because it best encompasses the appropriate test for granting an area variance. "No reasonable use," as set forth in *Kenosha County,* is no longer applicable when an area variance is being considered. Moreover, while there is a claim that the variance implicates shoreland zoning concerns, it should be noted that the proposed addition would not bring the Howes' home any closer to Silver Lake. Thus, we reverse the decision of the court of appeals and remand this case to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 36. PATIENCE D. ROGGENSACK, J., did not participate.

¶ 37. ANN WALSH BRADLEY, J. (*dissenting*). The majority opinion reaches an unfortunate result that diminishes the constitutionally protected public trust rights of *all* Wisconsin residents in the state's navigable waters. I hesitate to write these words for fear that by shining light on what the majority is doing, I may be compounding the damage that flows from its decision. Yet, I conclude that even a superficial reading of the majority's opinion renders the damage self-exposed.

¶ 38. By declining to admit that it is overruling *State v. Kenosha County Bd. of Adjustment,* 218 Wis. 2d 396, 577 N.W.2d 813 (1998), the majority attempts to camouflage the consequences of its decision. Instead of forthrightly acknowledging its actions, the majority simply concludes that the holding of *Kenosha County* is "no longer applicable." Majority op., ¶ 2. What is the

functional difference between a holding that is over-ruled and one that is "no longer applicable"? This sub-rosa approach undermines rather than promotes the principle of stare decisis.

¶ 39. More troublesome than the majority's camouflage, however, are the consequences of its decision. The unfortunate result of the majority opinion is that it sacrifices the constitutionally protected public trust rights that all citizens have in the navigable waters of this state in order to promote the local private interests of a few. By functionally overruling *Kenosha County,* it relaxes the standard necessary to obtain a shoreland variance. In emphasizing flexibility for local boards of adjustment and presuming that their decisions are correct, the majority dilutes appellate review, which will invariably undermine the legislative directive for uniformity of shoreland zoning. Cumulatively, such an approach will vitiate the purposes behind shoreland regulations of preserving the public interest in shoreland and the navigable waters of this state.

## I. The Public Interest

¶ 40. In Wisconsin, local boards of adjustment are authorized to grant variances from terms of a zoning ordinance only when specific conditions are met. Wisconsin Stat. § 59.694(7)(c) authorizes boards to grant variances that:

> [1] *will not be contrary to the public interest,* where, [2] owing to special conditions, [3] a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that [4] the spirit of the ordinance shall be observed and substantial justice done.

(Emphasis added.)

574

¶ 41. The threshold requirement for granting a variance is that it not be contrary to the public interest. The legislature has long recognized that strict regulation of buildings near shorelands is necessary to safeguard the constitutionally protected interests of the public in the state's navigable waters. Wis. Const. Art. IX, § 1 ("Jurisdiction on Rivers and Lakes; Navigable Waters").[1]

¶ 42. In 1965, the legislature passed the Navigable Waters Protection Law, which mandated that all counties enact shoreland zoning ordinances. The law provides that the purposes of shoreland zoning standards shall "further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structures and land uses and reserve shore cover and natural beauty." *See* Ch. 614, Laws of 1965, § 42, creating Wis. Stat. § 144.216 (now Wis. Stat. § 281.31(1)).

¶ 43. To aid in the fulfillment of the state's role as trustee of its navigable waters, the legislature directed the Department of Natural Resources to establish minimum standards for shoreland ordinances. Wis. Stat. § 281.31(6). The shoreland setback is the centerpiece of those minimum standards. It protects the value and views of the lakeshore property. The setback further serves as a visual and ecological buffer between protected public rights in navigable waters and develop-

---

[1] Although the public trust doctrine originally existed to protect commercial navigation, it has been expansively interpreted to safeguard the public's use of navigable waters for other purposes. *R.W. Docks & Slips v. State*, 2001 WI 73, ¶ 19, n. 1, 244 Wis. 2d 497, 628 N.W.2d 781. For a detailed discussion of the evolution of the public trust doctrine, see *Muench v. PSC*, 261 Wis. 492, 53 N.W.2d 514 (1952).

ment in adjacent lands. *See* Tracy K. Kuczenski, *Wisconsin's Shoreland Management Program: An Assessment With Implications for Effective Natural Resources Management and Protection,* 1999 Wis. L. Rev. 273, 283–84.

¶ 44. Under the current zoning system, state law requires every county to "zone by ordinance all shorelands in its unincorporated area." Wis. Stat. § 59.692(1m). Additionally, it requires the ordinance to meet certain shoreland zoning standards. Wis. Stat. § 59.692(6). If the county does not adopt a shoreland zoning ordinance or the state determines that an adopted ordinance does not meet the shoreland zoning standards, the state will adopt an ordinance for the county. *Id.* Accordingly, it is clear that "[l]ands adjacent to or near navigable waters exist in a special relationship to the state." *Just v. Marinette County,* 56 Wis. 2d 7, 18, 201 N.W.2d 761 (1972).

## II. The Standard

¶ 45. The controlling authority for shoreland zoning setback requirements was *Kenosha County,* a case decided unanimously by this court six years ago. By functionally overruling *Kenosha County,* the majority lowers the standard that must be met in order to obtain a shoreland variance. Consequently, it diminishes the protection afforded to shorelands and navigable waters.

¶ 46. In *Kenosha County,* a property owner sought a variance enabling her to build a deck into protected shorelands. 218 Wis. 2d at 398. The proposed deck would have reduced her shoreline setback to 64 feet. *Id.* at 401. This court considered whether the Kenosha County Board of Adjustment applied the cor-

rect legal standard for determining "unnecessary hardship" in order to grant a petition for the variance. *Id.* at 398.

¶ 47. The *Outagamie County* concurrence of Justices Crooks and Wilcox[2] aptly summarized the *Kenosha County* holding. It noted that the issue before the court was the definition of "unnecessary hardship," (the very same issue in this case). *See State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, ¶ 73, 244 Wis. 2d 613, 628 N.W.2d 376 (Crooks, J., concurring). The state wanted to define it as "no reasonable use," while the property owner wanted to define it as "unnecessarily burdensome." *Id.* The concurrence explained that the majority's holding in *Kenosha County* was that the state's standard of "no reasonable use" better incorporated the purpose underlying the shoreland regulations. *Id.* It observed:

> *Kenosha County* did consider the parties' definition of the unnecessary hardship standard in light of the purpose of the shoreland zoning regulations at issue. The State proffered a "no reasonable use in the absence of a variance" standard; the Board proffered an "unnecessarily burdensome" standard. *Id.* at 411–12. *This court concluded that the State's test better incorporated the purpose underlying the regulations, "to enforce a uniform setback that preserves the public's interest in shoreland and the navigable waters of the state."* Id. at 413.

*Id.* (emphasis added).

¶ 48. Now, the majority does an about-face and concludes that the "unnecessarily burdensome" standard better promotes the underlying purposes of the

---

[2] The concurrence of Justices Crooks and Wilcox in *State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, 244 Wis. 2d 613, 628 N.W.2d 376, is hereinafter referred to as the *Outagamie County* concurrence.

shoreland regulation at hand. On its facts, *Kenosha County* cannot be meaningfully distinguished from the present case. Both involve a lakefront property owner seeking to expand an existing residence within (or into) the shoreland setback area.[3] If anything, the facts in this case are more troubling than those of *Kenosha County,* for the petitioners' home is a nonconforming structure located a mere 30 to 34 feet from the water's edge and squarely within the shorelands of Silver Lake.[4]

¶ 49. Under the rule of stare decisis, similar facts should produce similar results. Adherence to stare decisis is critical because "[r]espect for precedent 'promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Johnson Controls, Inc. v. Employers Ins. of Wausau,* 2003 WI 108, ¶ 138, 264 Wis. 2d 60, 665 N.W.2d 257 (Wilcox, J., dissenting) (citation omitted).

¶ 50. However, the majority here abandons the "no reasonable use" standard and appears to adopt the very position advanced by the losing party in *Kenosha County.* Majority op., ¶ 2. This begs the question: what exactly is left of *Kenosha County* after today's decision?

---

[3] The "shoreland setback area" is defined in Wis. Stat. § 59.692(1)(bn) as "an area in a shoreland that is within a certain distance of the ordinary high-water mark in which the construction or placement of buildings or structures has been limited or prohibited under an ordinance enacted under [section 59.692]."

[4] Shorelands are defined as the area within 1000 feet from a lake, pond or flowage. *See* Wis. Stat. §§ 281.31(2)(f), and 59.692(1)(b).

¶ 51. Instead of answering this, the majority attempts to assuage readers' fears by noting that "the proposed addition would not bring the Howes' home any closer to Silver Lake." *Id.* In the context of state shorelands, such a comment ignores the cumulative effect of shoreland building.

¶ 52. The Wisconsin Association of Lakes, an organization that represents the interests of thousands of lakeshore property owners all across Wisconsin, warns in its amicus brief, "[g]eneral availability of variances permitting the horizontal expansion of structures so close to the water's edge would have the cumulative effect of enclosing our inland lakes within a wall of impermeable surfaces to the exclusion of vegetation and impairing the ecological functions of the shoreland buffer."

¶ 53. Indeed, the cumulative effect of such changes was the very reason the Department of Natural Resources became involved in this case. *See Hixon v. Public Service Comm.*, 32 Wis. 2d 608, 631, 146 N.W.2d 577 (1966) ("one fill, though comparatively inconsequential, may lead to another, and another, and before long a great body of water may be eaten away . . ."); *Sterlingworth Condominium Ass'n v. DNR*, 205 Wis. 2d 710, 721–22, 556 N.W.2d 791 (Ct. App. 1996) (DNR's public interest duty is to protect lakes against "cumulative impact").

¶ 54. Recognizing these concerns, the circuit court in this case concluded that the "no reasonable use" standard was appropriate. Ironically, it did so even after discussing and applying the *Outagamie County* concurrence relied upon by the majority. The circuit court stated, "I would find that the no reasonable use standard is implicated even under the Crooks-Wilcox analysis because of the shoreland zoning concerns being the

background and the public interest accordingly." Although the majority acknowledges this fact in its opinion, majority op., ¶ 8, it makes no attempt explain it.

¶ 55. Apparently the circuit court is not alone in its interpretation of the principles set forth in the *Outagamie County* concurrence. The concurring opinion in *Ziervogel v. Washington County Bd. of Adjustment*, 2003 WI App 82, 263 Wis. 2d 321, 661 N.W.2d 884 (Brown, J., concurring), discussed the *Outagamie County* concurrence at length. It praised the concurrence as "nicely explain[ing]" and "nicely summ[ing] up the law." *Id.*, ¶ 31, ¶ 48. The opinion then cited it to explain why the distinction between area and use variances should be rejected in lieu of purpose. It observed, "Justice Crooks' concurrence teaches that there is no reason to hold on to the artificial distinctions of 'area variances' and 'use variances' and of 'unnecessary hardship' versus 'practical difficulties.' " *Id.*, ¶ 40.

¶ 56. In describing the holding of *Kenosha County*, the concurring opinion in *Ziervogel* further relied on Justice Crooks and Justice Wilcox's analysis. It stated: "[T]he [*Kenosha County*] court looked to the purpose of the shoreland zoning regulation at issue. It then decided that because the purpose of the shoreland zoning ordinance was being invaded by the requested variance, the 'no reasonable use' definition of unnecessary hardship should adhere." *Id.* (citations omitted).

¶ 57. Contrary to the *Kenosha County* holding, the majority adopts the lower standard of "unnecessarily burdensome." Its decision to do so is a perplexing one. The majority claims that it is not overruling *Kenosha County*, 218 Wis. 2d at 396. Majority op., ¶ 32. Yet, it reverses the court of appeals for relying upon that decision. Similarly, the majority purports to adopt the principles set forth in the concurrence in *Outa-*

580

*gamie County*, 244 Wis. 2d 613. *See id.*, ¶ 24. However, it disagrees with the circuit court, which applied those principles here.

### III. The Consequences

¶ 58. The majority's decision to resurrect and apply the area-use distinction in the context of shoreland regulation is a dangerous one. Shoreland regulations, after all, consist primarily of area, not use restrictions.[5] Under the majority opinion, the shoreland setback requirement will always be subject to the lesser standard of "unnecessarily burdensome" despite its central role in shoreland regulation.

¶ 59. The majority further undermines shoreland regulations by diluting appellate review. It grants great deference to boards of adjustment. Majority op., ¶ 25. The majority emphasizes that appellate courts should accord great flexibility to local boards and imbues their decisions with a presumption that they are correct. *Id.*, ¶ 24. Yet in doing so, it ignores the threshold requirement that the variance must be in the public interest. Such presumptions and flexibility are inconsistent with the well-recognized legislative purposes underlying shoreland regulations of (1) uniformity of shoreland zoning and (2) preservation of the public's interest in shoreland and navigable waters of the state.[6]

---

[5] Statewide minimum standards for county shoreland zoning ordinances include a minimum setback of 75 feet from the ordinary high-water mark for most structures, minimum lot sizes, and limitations on the clearing of vegetation within 35 feet of the ordinary high-water mark. Wis. Admin. Code ch. NR 115.05 (March 2004).

[6] The majority attempts to address these concerns by emphasizing that "the Howes sought a variance from the 50

¶ 60. The problem with the majority's approach is illustrated by the case at hand. Here, the petitioners had already obtained two variances from the local board to increase the size of their "cottage," one of which resulted in a direct loss of shoreland. They then sought and received a third variance to construct a 10–foot by 20.5–foot addition to their living room and to build a 4–foot by 10–foot porch. Although the petitioners' desire for a larger home is understandable, the sentiment that "more room would be nice" should not be treated as an "unnecessary hardship," regardless of the standard.

¶ 61. There may very well be legitimate arguments for the application of a more relaxed standard to determine unnecessary hardship when the variance involved does not implicate shorelands, a matter subject to specific legislative direction and constitutionally protected public interests. Perhaps in the non-shoreland context, there is even a place for distinguishing between area and use regulations. But those arguments have no place here, where the proposed variance would enlarge the existence of a nonconforming structure within the shoreland setback. In the context of

percent rule . . ., not from a shoreland zoning provision." Majority op., ¶ 5, n. 7. Such a response merely continues the majority's effort to mask the consequences of its opinion.

I challenge the majority to boldly and clearly state: This opinion addresses only variances from the 50 percent rule. It does not implicate the standard for variances in the context of shoreland zoning.

The majority will not meet this challenge because it cannot. Indeed, from the beginning the circuit court judge realized that although this case was brought seeking a variance from the 50 percent rule, "the concerns of the State with regard to the water rights, with regard to the setbacks from bodies of water are implicated in this matter . . . ."

environmental regulations such as shoreland zoning, the "no reasonable use" rule simply makes more sense. *See* David M. Freibus, *A New Uncertainty in Local Land Use: A Comparative Institutional Analysis of State v. Outagamie County Board of Adjustment,* 2003 Wis. L. Rev. 571, 609.

¶ 62. The majority opinion is consistent with the lead opinion in *Outagamie County,* 244 Wis. 2d at 613. One commentator viewed that lead opinion as preoccupied with "the rights of individual homeowners compromised for a vision of the greater good." Friebus at 606. The same malady is evidenced here. In the long run, such a preoccupation with the rights of individual property owners forfeits the rights of all citizens in the shorelands and navigable waters of this state.

¶ 63. Even in the short run, however, the majority opinion falls wide of the mark. By heralding the rights of individual property owners in the shorelands of this state, the majority is actually undermining the rights of the rest of the shoreland owners. The Wisconsin Association of Lakes advanced in its amicus brief that this court should retain the no reasonable use standard. That standard, it asserts, best protects the public resource while at the same time enhancing the economic value of their private land. It explained:

> Some may find it ironic that the largest state association representing lakefront property owners would urge the Court to retain restrictive standards for building on lakeshores. After all, these are the property owners most directly regulated by shoreland zoning.
>
> But WAL's members recognize that shoreland zoning is a win-win policy for riparian owners. It protects water quality and habitat values of the public resource at their borders, while supporting the economic value of

their private land. . . . The investments of these property owners would be jeopardized by a relaxed variance standard . . . .

¶ 64. In the end, I fear that the majority opinion threatens the public trust rights of all Wisconsin residents in the state's navigable waters. By striking a balance contrary to the public interest, its decision squarely conflicts with longstanding public policy in Wisconsin. Given the purpose of shoreland zoning, the public interest involved, and the principle of stare decisis, the standard set forth in *Kenosha County* should prevail in this case. Accordingly, I dissent.

¶ 65. I am authorized to state that SHIRLEY S. ABRAHAMSON, C.J. joins this dissent.